[No. 1795. Decided September 16, 1895.]

HIRAM. H. PEASE *et ux., Appellants*, v. SUTCLIFFE BAXTER *et al., Respondents.*

CONDITIONAL SALE OF LAND — RESCISSION — FORFEITURE OF PAYMENTS — PAROL EVIDENCE.

When a contract for the sale of land provides for payment of the purchase price in installments, that conveyance shall be made only after full payment, and that, in case of default in the payment of the whole or any part of the purchase price or interest on the day when payable by the terms of the contract, the vendor may rescind the contract at his mere option, and all payments and improvements made by the purchaser shall be forfeited, the contract must be construed as one of conditional sale and not as an equitable mortgage. (GORDON and SCOTT, JJ., dissent.)

A contract, upon its face a conditional sale of land, providing for forfeiture of payments in case of the purchaser's default, cannot be shown by parol evidence to be in fact an equitable mortgage.

Where a contract for the sale of land provides for a forfeiture of payments made upon the failure of the purchaser to strictly comply with the terms of the contract, and also provides for a penalty against the vendor in case of a failure on his part to give a good and sufficient deed upon the fulfillment by the purchaser of his part of the contract, a forfeiture on account of default of the purchaser may be enforced in an action to recover possession and quiet title, notwithstanding the fact that the vendor's title may be defective.

*Appeal from Superior Court, King County.*

*Greene & Turner*, for appellants.

*Burke, Shepard & Woods,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—On the 6th day of August, 1890, the appellants, Hiram H. Pease and Mercie Pease, husband and wife, negotiated a sale of the land in question to Sutcliffe Baxter, one of the respondents, and Guy C. Phinney, now deceased. The amount to be paid for the land was about $26,000. The contract which was signed by the appellants herein and by Phinney and Baxter, provided for the payment of the purchase money in installments, and that such premises should be conveyed to the grantees when the purchase price should have been fully paid in strict compliance with the terms of the contract. The seventh paragraph of the contract is as follows:

"If said parties of the second part, their heirs, personal representatives or assigns, fail to pay the whole or any part of said purchase price or interest within the time and on or before the day above specified whereon or within which the same is by the terms of this contract due or payable, or fail to observe or do any other of the acts or things by them according to the terms of this contract to be observed or done, then the said party of the first part, his heirs, personal representatives or assigns may if he or they so elect and at his or their mere option rescind this contract; and in that case all payments and all improvements on said premises theretofore made by said parties of the second part, their heirs, personal representatives or assigns, shall be forfeited to the said party of the first part, his heirs, personal representatives or assigns, and the party of the first part, his personal representatives or assigns, may forthwith re-enter upon said premises and any or every part thereof and expel all persons therefrom."

The parties of the second part entered into possession under this contract, made the payments according to the terms of the contract, until about half the pur-

chase price, or $13,000, was paid.  They also expended several thousand dollars in permanent improvements upon the land.  It was, moreover, provided in the contract that the parties of the second part should keep the premises insured for the sum of $3,000.

The complaint alleges that when the time came for payment of the interest due on the 6th of June, 1893, amounting to $52.08, it was not paid and had not been paid at the time of the commencement of the action, and that the insurance agreed upon in the contract had been suffered by Phinney and Baxter to fall below the amount covenanted.  Upon the failure to pay this interest, the plaintiff elected to rescind the contract according to its terms, and served on the various parties entitled to notice the notice which the contract provided for, and demanded possession of the premises. This demand being refused, appellants brought their action under the statute to recover possession and quiet their title.  The answer admitted the contract, but, among other things, pleaded affirmatively that it was the intention of the parties to consider the contract not as a conditional sale but as an equitable mortgage, and proof was offered over the objection of the appellants to sustain this contention.  It was also alleged in the answer that the title was defective, and that the appellant was unable to convey to them a good and sufficient title to the land in question. There were other defenses, but we think these two propositions involve all that it is necessary to discuss in this case.

It will be observed that the main contention is as to the construction of this contract, the appellants insisting that it was a conditional sale; that the conditions were not complied with, and that they were entitled to rescind the contract according to the strict

letter of its terms; while the contention of the respondents is that the contract was in fact a mortgage, and that the remedy of the appellants is to foreclose the mortgage, the land being only a security for the purchase price.

The fact that this case seems to involve a hardship, that, if the contention of the appellants is to be sustained, the respondents are to be deprived both of the land and of the large amounts which they have already paid as part of the purchase price and also large amounts expended by them in improvements; has led us to a somewhat painstaking investigation of the law governing such a case; but we are convinced that as long as people are privileged under the law to make contracts for themselves, if they are unwise enough to make contracts which are burdensome, the law cannot relieve them.

This case was substantially before the court in *Reddish v. Smith*, 10 Wash. 178 (38 Pac. 1003), and it was there decided that, under the provision of a contract for sale of land that, in case the purchaser fails to pay promptly the monthly installments provided for after a demand of thirty days, the vendor could declare the contract forfeited, was entitled to enter upon and repossess himself of the premises and thereupon the contract should be at an end — there was a forfeiture of the payments made; and, it was further decided that under such contract, if any of the monthly payments were not made by the purchaser when due it was not a waiver of the vendor's right of forfeiture that he did not declare it until three payments had become due. The contract in the case cited is not nearly so explicit as that in the one at bar. The language discussed in that contract was as follows:

"In case the party of the second part shall fail to pay promptly the monthly installments herein provided for, after a demand made on him for the same of thirty days, then the party of the first part may, at his option, declare this contract forfeited and he shall enter upon and repossess himself of the said premises, and thereupon this contract shall be at an end."

In that case it was contended that the provision was simply for the forfeiture of the contract and not for the forfeiture of the payments made under the provisions of the contract, and this court said:

"While it is true that the courts will not supply language to create a forfeiture where the forfeiture is not specially provided for by the parties themselves, yet it seems to us that it was the clear, unequivocal intention of the parties to this contract . . . that the payments made by the appellants should be forfeited in case the respondents elected so to do, upon the non-performance of the contract by the appellants."

But in the case at bar there is no possible room for construction, and if parties have a right under any circumstances to make provisions for a forfeiture of payments in case of a sale of land, they certainly have been particular to make those provisions specific and certain in this contract. Whether we give to the language used a technical meaning or the meaning which is ordinarily given to such words, the conclusion is irresistible that a forfeiture was provided for, or else the language used is absolutely meaningless. To prevent any misconception of the right of the vendor to elect to rescind this contract the draftsman of the contract went beyond the ordinary form of words employed in such cases and provided that they might, at their *mere* option, rescind this contract; and it was not left for the courts to determine the rights of the

parties when once the vendor had elected to rescind, but it is especially provided that in such cases all payments and all improvements on said premises theretofore made should be forfeited to said party of the first part. And, as still more conclusively showing that the idea of a forfeiture was one of the prominent ideas incorporated in the contract, paragraph eight provides that "at any time after the payment of the value of said improvements and the sum that amounts to the expenses of getting possession under said lease, the said parties of the second part" shall have the right to rescind this contract under certain conditions; and the contract provides, "and in that case, *also*, all payments and all improvements upon said premises theretofore made by said parties of the second part . . . shall be forfeited to said party of the first part."

It is urged by the respondents that the principle for which they contend, viz., that the contract shall be construed to be a mortgage, is no more of a violation of the well established rule that oral testimony shall not be admitted to vary or contradict the terms of a written contract than the principle which allows an instrument, upon its face a deed, to be proven to be a mortgage. This exception to the general rule is so well established that it cannot now with propriety be overthrown. But while that is true, and whatever may have been the reason in the first instance for the adoption of this exception, we do not think that the rule should be extended to other instruments. A deed is really a portion of a mortgage, or, in other words, the provisions which make it a mortgage are something additional to the provisions of the deed, and they are in no way contradictory or inconsistent. But here it is too evident to admit of argument that

this instrument could only be construed to be a mortgage, which would destroy the right of forfeiture, by flatly contradicting the express terms of the contract itself.

It is claimed that the question of the equitable right of the vendee was not raised before this court in the case of *Reddish v. Smith, supra*; but while it is true that the subject was not discussed under the head of equitable mortgages, as it is by the learned counsel in this case, the equitable interests of the vendee were contended for in that case, and the principal discussed was the same, viz., the right of the vendor to rescind the contract and enforce the forfeiture provided for.

A great number of cases have been cited by the respondents to sustain their contention, all of which we have carefully examined, but none of them we think are in point. Most of them refer to the proposition which we have just spoken of in relation to the construction of deeds, and in none of them is their construed a contract which bears any relation whatever to the contract in question. It is true, in *Fisk v. Stewart*, 24 Minn. 97, the court held that, "when the real nature of a transaction between parties is confessedly that of a loan of money advanced upon the security of real estate granted to the party making the loan, whatever the form of the instrument taken as the security, it is always treated in equity as a mortgage," to which is annexed as an inseparable incident the right to an equity of redemption. But it is not confessedly a loan in this case, but, according to the terms of the contract, it was a sale of real estate, and the case cited does not bear upon the questions involved in the case at bar.

In *Gale v. Morris*, 29 N. J. Eq. 222, which was an action to reform a mortgage, the court held that an equitable mortgage could arise from an unsuccessful

attempt to make a valid mortgage deed, and this is simply in accordance with the law which we noticed above, that, where it was shown conclusively that it was the intention of the parties that the instrument in question should be a mortgage instead of a deed, the courts would construe it to be a mortgage, and none of the cases cited go further than this.

No case is cited by either side which is directly in point, and we must conclude that the presumption has always obtained in all courts that where a contract was plain and specific in its terms, and no fraud is alleged, the contract must be enforced. As was said by the court in *Gray v. Blanchard*, 8 Pick. 283, "It is a harsh proceeding on his (appellant's) part, but it is according to his contract, which must be enforced, if he insists upon it."

Even if it had been proper to have admitted oral testimony to explain away or change the meaning of this contract, the evidence was not of that positive character which would be sufficient to destroy the presumption that the intention of the parties to the contract and their final agreement had been merged in the written contract. Baxter testified that he had a conversation with Pease, in which Pease stated that he did not want the principal; that he wanted to get it converted into an interest bearing proposition; that he wanted to have a monthly income on which himself and wife could live. Conceding this to be true, it is not at all inconsistent with the idea that he intended to demand his right of forfeiture under the contract if the interest was not paid and his monthly income ceased; for, even construing it to be a mortgage, he would have a right to foreclose his lien upon the failure of the vendees to pay according to the terms of their contract, and that would equally destroy the idea

of a monthly income. When asked if anything was said about a forfeiture, or anything of that sort, the witness answered, " Nothing said about a forfeiture at all." This conversation, however, the witness testifies was held sometime during the last part of July, while the contract was entered into on the 8th day of August, and at that time something certainly was said about a forfeiture, and that was the time when these respondents should have objected to signing the contract, if it embodied a different proposition from the one which they had agreed to a week or ten days prior. They solemnly executed this contract, and in the absence of fraud it is conclusively presumed to speak the minds of the contracting parties. Any other construction would destroy the force and effect of all written obligations and leave everything to the chance of slippery memory, the very thing which a written contract is intended to guard against.

The other proposition urged by the respondents, that the forfeiture could not be compelled until the question of title which is raised by the answer had been decided, we think is not tenable, especially under this contract. These parties have made a law for themselves; have provided in that contract for almost every emergency, and the question of failure to give to the parties of the second part a good and sufficient deed was not neglected, for paragraph nine provides that, upon the fulfillment by the parties of the second part of their contract, the party of the first part will give a good and sufficient deed of the premises, and in case of failure to do so, binds himself and his heirs and personal representatives to pay them the sum of $100,-000. This is the security which they saw fit to take at the time the contract was entered into with reference

to the title, and they cannot now demand new or additional security.

The judgment will be reversed, and the cause remanded with instructions to the lower court to render judgment for the plaintiffs in the case, in accordance with the prayer of the complaint.

HOYT, C. J., and ANDERS, J., concur.

GORDON and SCOTT, JJ., dissent.