[No. 3461.   Decided March 5, 1900.]

HENRY CHURCHILL, *Respondent*, v. HENRY ACKERMAN, *Appellant*.

| | |
|---|---|
| 22 | 227 |
| 25 | 663 |
| 22 | 227 |
| 36 | 19 |
| 22 | 227 |
| 38 | 673 |

CROPS—TITLE OF ADVERSE CLAIMANTS—RIGHTS OF OCCUPANT OF LAND.

One who is in the possession of land, although his right thereto has been forfeited, is entitled to the crops grown and severed by him, as against one who holds an executory contract for the land, but who is not put in possession until after the maturity and severance of the crops.

Appeal from Superior Court, Whitman County.—Hon. WILLIAM McDONALD, Judge.   Reversed.

*Chadwick & Bryant,* for appellant.

*J. T. Brown,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This is an action for damages for the conversion of wheat, the alleged property of the respondent, by the appellant.   The complaint in substance alleged ownership and possession of a certain tract of land in Whitman county, Washington, and ownership of a certain volunteer crop of wheat which had grown on said land in the year 1897; that on the 26th day of July, 1897, defendant wrongfully and unlawfully entered upon said land and wrongfully and unlawfully harvested and converted to his own use two hundred and seventy-four sacks of wheat grown on said land; that said wheat was of the value of five hundred and fifty dollars,—and asked for damages in the sum of six hundred and fifty dollars.   The answer denied the allegations of the complaint, and alleged that the defendant had entered into the possession of the lands described in the complaint and other lands, under a Northern Pacific land contract, made on the 11th day of Janu-

ary, 1892, whereby the said Northern Pacific Railroad Company agreed to sell to the defendant the said lands for a certain stipulated consideration; that the defendant had been put into the possession of the said land by the said Northern Pacific Railroad Company, and that he had continued so in possession until the 1st day of February, 1898; that during the year 1897, while thus in the peaceable and open possession of said land, defendant by his own effort raised thereon a crop of grain, and had the same harvested and sacked, and was the owner thereof, and was in the possession thereof, on or about the 20th day of August, 1897, when the plaintiff wrongfully entered upon said land and wrongfully took and converted to his use one hundred sacks of threshed wheat, without the consent and against the will of the defendant; that said one hundred sacks were of the value of one hundred and forty dollars, and the sacks which contained the wheat were of the value of six dollars,—and asked for damages in the sum of one hundred and forty-six dollars. The reply of the plaintiff denied the allegations of the answer generally, and admitted that on the 11th day of January, 1892, the defendant had entered into the contract with the Northern Pacific Railroad Company as alleged in the answer, but affirmed that since the 18th day of August, 1896, and from thence to July 3, 1897, the Northern Pacific Railway Company became and was the owner of the land and contract mentioned in defendant's answer; that the Northern Pacific Railway Company, prior to October 15, 1896, under the terms of their contract with defendant, had given the defendant notice in writing, as provided in their contract, that all his right, title, interest, estate, and possession of, in, or to said land under said contract had become wholly forfeited by the defendant, and had been terminated and canceled and annulled by it, as it had a right to so forfeit by reason of the conditions of the contract afore-

said; and that thereafter, on the 31st day of January, 1897, the Northern Pacific Railway Company, under the conditions of the said contract and as owner of the said land and contract, notified the defendant that all his rights of ownership or possession to said land were forfeited, etc.; that the Northern Pacific Railway Company thereafter remained in possession of said land until the 23d day of July, 1897, at which time it sold said land to plaintiff and placed him in possession thereof, from which said time plaintiff has been in possession thereof. A demurrer to the complaint, a motion directed to the second amended reply, and a demurrer to the second amended reply, were overruled by the court. Upon the completion of plaintiff's testimony in chief, the defendant moved the court for a non-suit, which motion was overruled. The cause was tried by a jury, and a verdict rendered in favor of the plaintiff in the sum of two hundred dollars.

Very lengthy instructions were given by the court. Some of the instructions involved questions which were not in issue and upon which no testimony had been adduced; and for this reason the judgment would have to be reversed in any event. We will not notice many of the alleged errors—as it is not necessary to do so under the view we take of the law governing the case—such as errors alleged in the admission and rejection of testimony, the competency of the testimony in relation of the notice given by the Northern Pacific Railroad Company to the defendant, or the right of the plaintiff to the possession of the land in question before the reception by him of the contract between himself and the Northern Pacific Railway Company; for there is a question at the threshold of this case which determines it. It is presented both by the motion for default, namely, reason number three, that there is no evidence submitted to the court showing that the plaintiff was ever in possession of said lands prior to

the time of harvesting and removal of said crops, and by the seventh instruction, which was duly excepted to, and which is as follows:

" You are further instructed that if you find from the evidence that the defendant did purchase the land in question prior to July, 1897, upon contract for payments therefor in installments, and said contract contained a forfeiture clause, as defined in the last instruction, and that the party of whom he purchased notified him of his delinquency and of its election to declare his forfeiture, in the manner and form provided in the contract of purchase, and that subsequent to the time of such notice of such forfeiture, the grantor, or its successors in interest, sold to the plaintiff the land in question, such sale to the plaintiff would carry with it the title to any crop growing upon said land and premises at the time of sale, and the plaintiff would be entitled, under the law, to enter said premises and harvest the crops thereon; and if the defendant, after such sale of said land to plaintiff, entered upon said premises and harvested and removed the crops therefrom, and you so find from the evidence, then I instruct you to return a verdict for the plaintiff, for the value of the crops so removed by defendant."

And the same matter, in substance, is given in the eighth instruction. This instruction was not the law generally, and was especially not so in its application to this case. The substance of the instruction is that if the defendant's contract to purchase had been forfeited, and the plaintiff had a subsequent contract of purchase, then the plaintiff should recover; and this raises directly the proposition as to whether a plaintiff can maintain an action for the value of crops grown and matured prior to his possession of the land on which said crops are grown. The law is to the effect that he cannot, even where his title to the land is unquestioned. Much less would he be enabled to do so where he holds simply an executory contract, such as is held by the plaintiff in this case, which might, or

might not, ripen into a title. And that such a contract as this is executory and conveyed no element of title, but could be forfeited upon violations of its conditions, see *Reddish v. Smith,* 10 Wash. 178 (38 Pac. 1003, 45 Am. St. Rep. 781); *Pease v. Baxter,* 12 Wash. 567 (41 Pac. 899). In this case there was no testimony whatever showing possession on the part of the plaintiff prior to the severance of the crops from the realty. The plaintiff testified that he received notice of the acceptance of his contract on the 25th of July, and that on the 26th he went over and notified the defendant that he claimed the crop; but he exercised no act of possession, nor did he attempt to exercise any, according to his own testimony, until he did so by putting a fence around the land, a considerable length of time after the crop had been cut and threshed. And there is no dispute of the fact that the defendant was in peaceable possession of the whole tract of land which embraced the land in dispute, and that he peaceably and without opposition severed the grain from the realty and threshed the same.

That the title to crops follows actual possession, and not a right to possession merely, is well established; and that when a person in adverse possession severs crops before recovery, the title thereto is in the former, is equally well established. In *Stockwell v. Phelps,* 34 N. Y. 363 (90 Am. Dec. 710), it was held, that when a party in possession of land, claiming adversely to all others, sells to a third party the hay cut therefrom during such occupancy, the legal title thereto passes to his vendee, as against the party claiming title to said premises, although not in possession. See, also, *Brothers v. Hurdle,* 51 Am. Dec. 400; *Dollar v. Roddenbery,* 97 Ga. 148 (25 S. E. 410); *Hinton v. Walston,* 115 N. C. 7 (20 S. E. 164).

In *Page v. Fowler,* 39 Cal. 412 (2 Am. Rep. 462), it is held that, while the owner might recover for use and occu-

pation, he could in no case be held to be the owner of the crops grown and actually harvested on the land by the defendant while in possession.    The facts in this case are in principle identical with the facts in the case at bar. In that case it is said:

" It is undoubtedly true, that, at common law, a person who had been ousted from land might, after a recovery and re-entry, maintain his action of trespass for the mesne profits and for waste, for the reason that after re-entry the law supposes he has always been seized and the acts of the defendant were a continuous trespass upon the rightful possession of the plaintiff; but no case has been cited in which this principle has been held to make the owner of the land out of possession, under such circumstances, the owner of the crops grown and actually harvested by the defendant.    The very fact that he may recover the rents and profits of the land, shows that he cannot recover the crops; for, as was well said in the case of *Stockwell v. Phelps* (34 N. Y. 363), the owner of the land, in such cases, does not recover the value of the crops raised and harvested, but the value of the use and occupation of the land; and the annual crops of grain and grass, which contain both the value of the use of the land and the labor of the farmer, do not, under such circumstances, belong to the owner of the land.    It would be an oppressive rule to require every one who, after years of litigation perhaps, may be found to have a bad title, to pay the gross value of all the crops he has raised."

To the same effect is *Johnston v. Fish,* 105 Cal. 420 (38 Pac. 979, 45 Am. St. Rep. 53), where the rule is laid down that the doctrine applies to volunteer crops, as well as to crops seeded the same year in which they were gathered.    In the case at bar the wheat harvested was from a volunteer crop, the original crops having been planted by the defendant.    The testimony shows that the first crop was a partial failure, and that it was thought best to allow the second crop to volunteer; but the testimony is undisputed that the volunteer crop was taken care of by the de-

fendant; that it was kept fenced and protected from the ravages of stock; that some thirty-five dollars worth of poison was purchased and distributed in the ground on which this wheat grew for the purpose of protecting it from destruction by squirrels which infested that part of the country. So that we think that the fact that it is a volunteer crop does not distinguish it in principle from any of the cases cited, and is, as is shown, in that respect identical with the case last above quoted. Quotation is made in this case from *Brothers v. Hurdle,* 10 Ired. 490 (51 Am. Dec. 400), where the court said:

" But when one who is in the adverse possession gathers a crop in the course of husbandry, or severs a tree or other thing from the land, the thing severed becomes a chattel, but it does not become the property of the owner of the land; for his title is divested—he is out of possession, and has no right to the immediate possession of the thing, nor could he bring any action until he regains possession.  .  .  . The owner of the land cannot sue for the thing severed in trover or detinue as a chattel; for it is not his chattel—it did not become so at the time it was severed, and the title to it as a chattel cannot pass to him afterward, when he regains the possession, by force of the *jus postliminii.*"

In *Faulcon v. Johnston,* 102 N. C. 264 (9 S. E. 395, 11 Am. St. Rep. 737), it is held that the owner of land held adversely is not the owner of the crops and cannot recover them, or their value, from one who has received and converted them, citing *Branch v. Morrison,* 6 Jones N. C. 16; *Ray v. Gardner,* 82 N. C. 454.

If there are any cases sustaining the contrary doctrine, they have not been suggested. We think, for many reasons, that the rule announced is a just one, and therefore adopt it. Under the law as applied to the testimony in this case, the non-suit asked for by the defendant should have been granted.

The judgment will be reversed and the cause remanded, with instructions to proceed in accordance with this opinion.

GORDON, C. J., and FULLERTON and REAVIS, JJ., concur.