[No. 7985.   Department One.   June 26, 1909.]

H. D. Younkman *et al.*, *Respondents*, v. C. D. Hillman *et al.*, *Appellants.*[1]

Lotteries—Contract—Construction—"Purchasers."    An offer of a prize to the "purchasers" of a lot in a townsite cannot, before completion of his contract, be taken advantage of by one who had entered into the usual land contract for purchase on installments, title remaining in the vendor until all payments were made, with right of forfeiture in case of default.

Appeal from a judgment of the superior court for King county, Charles E. Shepard, Esq., judge *pro tempore*, entered January 7, 1909, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action on contract.   Reversed.

*Fred'k R. Burch*, for appellants.

*O. A. Tucker* and *Alfred E. Parker*, for respondents.

Morris, J.—On the 26th day of October, 1907, the appellants published an advertisement of the sale of lands belonging to them, situate at Boston Harbor.   Among other inducements held out to intending purchasers, was the following: "$500 for the first baby born."   On the next day they ran an excursion from Seattle to Boston Harbor, and on the trip distributed circulars containing a similar offer in these words:   "$500 in gold coin will be given away to the first baby born."   On November 10, a second excursion was run.   Defendant Hillman, being on board, announced to those present that he would pay a reward of $500 to the first married couple to whom a child should be born upon any portion of the property known as Boston Harbor, conditional only upon the purchase by contestants of lots within the Boston Harbor plat.   Plaintiffs, being authorized by Mother Church and the law of the land, and deeming them-

[1]Reported in 102 Pac. 773.

selves possessed of other necessary qualifications, gazed upon the golden crown, held out to the victors in this tournament of love, with longing eyes, and then and there announced their intention of entering the contest. Defendant Hillman, being somewhat of a boomer and doubtless being of the same mind as a distinguished citizen of this Nation, looked with favoring eyes upon any increase in the birth rate, and instructed plaintiffs how to equip themselves for the race by becoming purchasers of Boston Harbor lots, it being remembered that this was the one evidence of good faith demanded from all contestants, before entry, and the only condition under which competition was to be permitted. Plaintiffs, confident of their ability to win the prize, duly entered into the required contract on November 11, 1907, whereby they agreed to purchase a lot in Boston Harbor for the sum of $1,000, paying $10 down, giving a chattel mortgage upon a piano in the sum of $90, and contracting to pay $10 each month thereafter, with quarterly interest, until the purchase price should be paid, when they were to receive a good and sufficient deed.

It was further provided that, in case of failure in making the payments as due, the contract might be rescinded at defendants' election, and all sums then paid upon the contract should be forfeited; time being of the essence of the contract. Plaintiffs took possession of their lot and, on December 7, 1907, the stork made its first visit to Boston Harbor, leaving a baby girl at plaintiffs' home. Flushed with pride upon the realization of their fondest hopes, plaintiffs hastened to the defendant Hillman to apprise him of the happy event, choosing December 17 as the day for making the glad announcement; when, much to their surprise and disappointment, Hillman refused to partake of their joy, and heartlessly and coldbloodedly referred them, like Shylock of old, to the obligation of their bond, insisting that they had not as yet complied with its terms in that they were not purchasers. Being unable by argument or entreaty to dissuade Hillman from this position, they brought suit, and finding the lower

court in a more complacent mood than Hillman, they obtained
a judgment against both defendants in the full sum of $500;
whereupon the defendants became aggrieved and, seeking to
deprive plaintiffs of the fruits of their victory, took an ap-
peal.

It is apparent that the only question of law involved in
this appeal is, Were the plaintiffs purchasers? Broadly speak-
ing, a purchaser is one who acquires title otherwise than
by descent; but in its generally accepted meaning it refers to
the acquisition of property for a valuable consideration.
The contract entered into between the parties hereto was in
no sense a transfer of the title. Appellants divested them-
selves of no rights nor interests in the property, except pos-
session and those rights incident to possession. Their con-
tract was to convey by a good and sufficient deed upon re-
spondents' compliance with all the terms and conditions to
be by them performed. There is no language in the con-
tract that can be interpreted into a present sale. The terms
adopted by the parties to express their intention are: "party
of the first part will sell;" "party of the second part will
purchase;" and these agreements are to be performed upon
full compliance with other and attendant agreements. The
whole tenor and effect of the contract is clearly in contem-
plation of a future and not a present sale. Such contracts
have invariably been held to be contracts for title or agree-
ments to convey, not ripening into even an equitable title
until the vendee has placed himself in such a position by per-
formance that he can compel a conveyance. *Chappell v. Mc-
Knight,* 108 Ill. 570; *Nunngesser v. Hart,* 122 Iowa 647,
98 N. W. 505; *Stewart v. Fowler,* 37 Kan. 677, 15 Pac. 918.

The obligation of the vendor in these contracts is similar
to that of the obligor in a bond for a deed, and it is held that
"a bond to convey land is not a title, but simply a contract
to convey title." *Martin v. Wright,* 21 Ga. 504; *Dahl v.
Pross,* 6 Minn. 89. We cannot regard respondents as pur-
chasers, there being no investment of any title in them; nor,

under the contract, any passing of title until a compliance with its terms. A purchaser means one who has acquired the title, not one who holds under a bond for a conveyance. *Gilpin v. Davis*, 2 Bibb (Ky.) 416.

In *Reddish v. Smith*, 10 Wash. 178, 38 Pac. 1003, 45 Am. St. 781, we held that contracts providing for forfeiture of installments paid at option of vendor, as does this contract, were conditional sales; and in *Pease v. Baxter*, 12 Wash. 567, 41 Pac. 899, and *Churchill v. Ackerman*, 22 Wash. 227, 60 Pac. 406, the holding was that such contracts convey no title. We are inclined to regard these authorities as decisive. Respondents, then, not being purchasers, were not in a position to enforce their demand.

The judgment is reversed, and the cause remanded with instructions to dismiss.

RUDKIN, C. J., GOSE, and CHADWICK, JJ., concur.

FULLERTON, J., concurs in the result.