[No. 10427.  *En Banc.*  October 8, 1913.]

TIETON HOTEL COMPANY, *Respondent*, v. WILLIAM MANHEIM *et al.*, *Appellants.*[1]

VENDOR AND PURCHASER—EXECUTORY CONTRACT — TITLE — FORFEITURE—HUSBAND AND WIFE—CONTRACT FOR COMMUNITY PROPERTY. An executory contract for the sale of real estate, in which time is of the essence, and subject to forfeiture for nonpayment of the purchase price, does not convey title, legal or equitable; and where the husband, contracting to acquire community property, defaulted and acknowledged a forfeiture, neither the community nor heirs of the wife acquired any interest.

CONSTITUTIONAL LAW—DUE PROCESS OF LAW—FEDERAL QUESTIONS. No Federal question of due process is involved where defendants were brought into court by regular process, and they appeared and submitted their claim to a court of competent jurisdiction, and prosecuted an appeal, and it was found that they had no claim of right.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered January 20, 1912, in favor of the plaintiff, in an action to quiet title, tried to the court. Affirmed.

*Lee C. Delle,* for appellants.

*Parker & Richards* and *Fred Fontaine,* for respondent.

MOUNT, J.—On November 9, 1905, Priscilla Lee, the owner of certain lots in North Yakima, entered into a contract for the sale of the lots to William Manheim for $7,500. The contract provided for the payment of $500 in cash, and the remaining $7,000 was to be paid on or before May 9, 1906, when a deed would be given. The contract is in the usual form of executory contract for the sale and purchase of land. It provided that time was of the essence, and that, on default of the vendee, the vendor might declare a forfeiture. This contract was executed by Priscilla Lee and William Manheim.

[1]Reported in 135 Pac. 658.

21—75 WASH.

It was afterwards duly recorded in the records of Yakima county.

William Manheim was a married man at the time he entered into this contract, and remained so up to the 1st day of February, 1906, when his wife died, leaving four adult and two minor heirs. On May 9, 1906, the time fixed in the contract for its payment, William Manheim failed to pay the balance due; and on the next day, the vendor served upon him notice of forfeiture, which was accepted by Manheim. He acknowledged the notice of forfeiture in words as follows: "And I do hereby acknowledge that said contract is at an end, and that all rights thereunder have been forfeited." This notice of forfeiture, with the acknowledgment of William Manheim, was on the same day filed for record. Priscilla Lee had at all times been in the possession of the property. Thereafter, on the same day, she conveyed the lots to J. D. Medill, and by successive subsequent conveyances, title passed to the plaintiff. During the ownership of Elliott Brothers, Incorporated, an intervening owner, the property was improved by the erection thereon of a three-story brick building, at a cost of $40,000; and it is agreed that the property is now of the value of $70,000. The plaintiff brought this action to free the property from a claim of interest by the defendants and to quiet the title as against them. A decree was entered in favor of the plaintiff in the court below. The defendants have appealed.

The main contention of the appellants is that, under the contract, the community consisting of William Manheim and wife, acquired a community interest in the lots, and that, on the death of Mrs. Manheim, her community interest passed immediately to her children, and that the forfeiture of the contract was not binding upon the children of William Manheim and wife, and, therefore, the children at this date have the right to specifically enforce the contract.

It is a settled rule in this state that executory contracts for the sale and purchase of land do not convey title, either

legal or equitable. *Reddish v. Smith*, 10 Wash. 178, 38 Pac. 1003, 45 Am. St. 781; *Pease v. Baxter*, 12 Wash. 567, 41 Pac. 899; *Churchill v. Ackerman*, 22 Wash. 227, 60 Pac. 406; *Johnson v. Sekor*, 53 Wash. 205, 101 Pac. 829; *Younkman v. Hillman*, 53 Wash. 661, 102 Pac. 773. In *Churchill v. Ackerman, supra*, at page 231, we said:

"Such a contract as this is executory and conveyed no element of title, but could be forfeited upon violations of its conditions."

In *Johnson v. Sekor, supra*, at page 207, in referring to a contract similar to the one in this case, we said:

"It is plain under these facts, which are undisputed, that the appellant has no interest in the property. The title never was conveyed to Cory. He did not have possession. He had a contract for purchase merely. This contract provided that time was of the essence of it and, if payments were not made as agreed, it might be forfeited without notice. It was forfeited after notice for failure to perform by Cory. At the time of its forfeiture, Cory was notified and declined to finish the payments. The interest of the judgment creditor was no greater than that of the judgment debtor. . . .

"Even if the rule is as contended for by appellant, that a judgment creditor has a lien on the equitable estate of the judgment debtor, such lien would cease when the equity ceased. In this case the equitable estate of Cory in these lots depended on the life of the contract of purchase. It was liable to forfeiture upon nonperformance. The forfeiture as to him meant a forfeiture as to all claiming through him. Otherwise the contract would be of no avail to the seller, for whose benefit this clause was inserted."

And in *Younkman v. Hillman, supra*, at page 663, we said:

"The whole tenor and effect of the contract is clearly in contemplation of a future and not a present sale. Such contracts have invariably been held to be contracts for title or agreements to convey, not ripening into even an equitable title until the vendee has placed himself in such a position by performance that he can compel a conveyance. *Chappell v. McKnight*, 108 Ill. 570; *Nunngesser v. Hart*, 122 Iowa

647, 98 N. W. 505; *Stewart v. Fowler*, 37 Kan. 677, 15 Pac. 918.

"The obligation of the vendor in these contracts is similar to that of the obligor in a bond for a deed, and it is held that 'a bond to convey land is not a title, but simply a contract to convey title.' *Martin v. Wright*, 21 Ga. 504; *Dahl v. Pross*, 6 Minn. 89. We cannot regard respondents as purchasers, there being no investment of any title in them; nor, under the contract, any passing of title until a compliance with its terms. A purchaser means one who has acquired the title, not one who holds under a bond for a conveyance. *Gilpin v. Davis*, 2 Bibb (Ky.) 416.

"In *Reddish v. Smith*, 10 Wash. 178, 38 Pac. 1003, 45 Am. St. 781, we held that contracts providing for forfeiture of installments paid at option of vendor, as does this contract, were conditional sales; and in *Pease v. Baxter*, 12 Wash. 567, 41 Pac. 899, and *Churchill v. Ackerman*, 22 Wash. 227, 60 Pac. 406, the holding was that such contracts convey no title. We are inclined to regard these authorities as decisive."

It is, therefore, plain from our previous holdings upon contracts of this character that, until the contract was performed, no title, either legal or equitable, passed from the vendor to the community; and that, upon the failure of the Manheims to comply with the terms of the contract, no interest whatever in the property was vested in the Manheims, or in any one claiming through them.

Conceding that whatever interest William Manheim acquired in the contract, or the sale to which it referred, was a community interest, that interest necessarily depended upon the fulfillment of the contract. William Manheim was the agent of the community, and was authorized under the statute to have the management and control of the community property. Rem. & Bal. Code, §§ 5917, 5918 (P. C. 95 §§ 27, 29). And until the interest which he acquired at that time became an absolute interest, and vested some sort of title in the community, the community had no greater interest than William Manheim himself. It is plain, we think, that William Manheim, having acknowledged that the contract

was at an end, and that all rights thereunder had been forfeited, is in no position to claim any interest in the contract, or in the real estate to which it referred. And therefore it seems plain that, this claim being made through him, the community has no interest. For whatever interest the community acquired, it acquired through the act of William Manheim. The interest of the community was incipient, and until it ripened into a completed interest, the community acquired nothing. It seems too plain for argument that, if Mrs. Manheim had survived the period of the contract, and William Manheim, during her lifetime, had made the acknowledgment which he did make, she would have been bound thereby; and that the contract as to both William Manheim and his wife would have been entirely avoided. The same rule must follow as to those claiming through Mrs. Manheim. We think it is plain, both upon reason and the rule of this court, that the heirs of Mrs. Manheim have no rights under the contract. It is, therefore, unnecessary to consider other questions which are presented upon this appeal; except possibly a question which is claimed by the appellants to be a Federal question.

Appellants state in their brief, in substance, that they have been deprived of their property without due process of law in contravention of the 14th amendment of the constitution of the United States. There is no merit in this contention; for what we have heretofore said upon the case indicates quite clearly that the appellants were brought into court by regular process; they appeared in the action and submitted their claim to a court of competent jurisdiction; they have prosecuted an appeal to this court; they have asserted their claim of right, and it has been found that they have no claim of right. It has been said by the supreme court of the United States:

"A trial in a court of justice according to the modes of proceeding applicable to such a case, secured by laws operating on all alike, and not subjecting the individual to the

arbitrary exercise of the powers of government unrestrained by the established principles of private right and distributive justice—the court having jurisdiction of the subject-matter and of the parties, and the defendant having full opportunity to be heard—met the requirements of due process of law." *Chicago, B. & Q. R. Co. v. Chicago*, 166 U. S. 226, 234.

See, also, *United States v. Cruikshank*, 92 U. S. 542; *Leeper v. Texas*, 139 U. S. 462. No Federal question is involved in the case.

The judgment of the lower court is therefore affirmed.

CROW, C. J., CHADWICK, and PARKER, JJ., concur.

GOSE, FULLERTON, ELLIS, MAIN, and MORRIS, JJ., concur in the result.