[No. 13106. Department One. July 21, 1916.]

ELIZABETH CONVERSE, *Appellant*, v. PHILIP LABARGE *et al.*, *Respondents.*[1]

HUSBAND AND WIFE — COMMUNITY PROPERTY — HUSBAND'S EXECUTORY CONTRACT FOR PURCHASE—FORFEITURE. An executory contract for the sale of land to a married man does not confer title upon the community or vest any interest in his wife until fully performed, and may be forfeited by failure of the husband to comply with the conditions, and the wife is not a necessary party to a relinquishment or to a declaration of forfeiture.

Appeal from a judgment of the superior court for Spokane county, Back, J., entered April 29, 1915, upon findings in favor of the defendants, in an action to quiet title and obtain possession of land, tried to the court. Affirmed.

*Hibschman, Dill & White,* for appellant.

*Cannon & Ferris,* for respondents.

FULLERTON, J.—Elizabeth Converse brought this action to quiet title to lot seven, block two, and the west five feet of lot six, block two, Peyton Place, an addition to the city of Spokane, asking judgment that she be placed in possession of the property and that she be awarded the sum of $750 for its wrongful detention. She made parties defendant, the record owner, the Hilliard Investment Company, its tenant

[1]Reported in 158 Pac. 958.

Philip LaBarge, and her husband, A. B. Converse, who had deserted her in the year 1910. From a judgment in favor of the Hilliard Investment Company, she appeals. There is no statement of facts on the appeal; the record being restricted to the transcript showing the pleadings, findings, and conclusions of the trial judge, and the judgment entered in the action.

On August 6, 1907, Alexander Kelley, who was then the owner in fee simple of the real property in controversy, executed to A. B. Converse, husband of the appellant, an executory contract for the sale to him of the premises for $2,800, subject to a mortgage of $1,500 in favor of one Harris. The consideration for the transfer of the property was the assumption by A. B. Converse of the Harris mortgage, the payment of $200 cash, and the payment of the balance of $1,100 in installments of $50 per month, with interest at the rate of eight per cent per annum. This contract recited that a deed of the premises to Converse had been placed in escrow and was to be delivered upon fulfillment of the terms of the contract. There was no finding, however, that such a deed was in existence or had ever been executed. The contract alone was placed in escrow with the Spokane State Bank to be delivered on payment of the final installment of the purchase price. The contract further provided for payment by Converse of taxes and assessments, and contained the following forfeiture clause:

"But in case the second party shall fail to make the payments as set forth in this agreement, or any of them, punctually, and upon the terms specified, the times of payment being declared to be of the essence of this agreement, then the party of the first part [Kelley], his heirs, executors, or assigns, shall have the right to declare this agreement null and void, and in such case all the rights and interest of second party [Converse] hereby created or then existing shall utterly cease and determine, and the premises shall revert to and revest in said first party without any declaration of forfeiture or act of reentry, and second party shall have no

right of reclamation or compensation for money paid or improvements made, as absolutely, fully and perfectly as if this agreement had never been made, and in such event such payments shall be retained by said party of the first part as compensation for the use and occupancy of said premises by said party of the second part, and as rental thereof."

On August 27, 1909, A. B. Converse, being in arrears in his payments to Kelley and having defaulted in payment of taxes, applied to S. Hilliard for a loan, which the latter refused to make. An agreement was then entered into between Kelley, Converse and Hilliard by the terms of which Hilliard took a deed to the premises from Kelley, paying as a consideration for the deed the sum of $1,000, which was divided between Kelley and Converse, the latter receiving some $500. The debt to Kelley from Converse was treated as liquidated. As part of the transaction, Hilliard and Converse entered into an agreement in writing by which Hilliard covenanted to convey the premises in fee simple to Converse, subject to the Harris mortgage, on payment of the sum of $1,000, at the rate of fifty dollars per month, commencing October 15, 1909, with interest at ten per cent per annum, together with all taxes and assessments levied on the realty subsequent to the year 1907. Time was made of the essence of the contract, and it was provided that, upon the failure of Converse to perform the covenants on his part, Hilliard was authorized to forfeit all payments made on the contract as liquidated damages and should have the right to enter and take possession of the premises.

The appellant in the present case is the wife of A. B. Converse. She did not join her husband in the execution of any of the foregoing contracts, releases, and assignments made by him respecting the property. The Converse family made their home upon the premises from the time of the acquisition of the original contract in 1907 until some time in the year 1911. The appellant had no knowledge of the transactions of August 27, 1909, until early in the year 1910,

when she went to the office of Hilliard's agent for the purpose of making payment of fifty dollars on the contract. A. B. Converse made two payments amounting to $75 on his contract with Hilliard, and then on January 17, 1910, made an assignment in writing of his contract with Hilliard to W. R. Parks, the appellant not joining therein. In February, 1911, Hilliard brought an action against Converse and Parks and their respective wives to recover possession of the property and to quiet his title thereto. After the commencement of the action, Parks and wife executed a quitclaim deed to Hilliard and were apparently dismissed from the action. Judgment was taken, however, against Converse and wife, on which Hilliard obtained possession of the property. Hilliard and wife subsequently conveyed the property to the Hilliard Investment Company, which, at the time of the present action, was in possession by its tenant Philip LaBarge. In addition to the payment of $1,000 at the time of the transaction of August 27, 1909, Hilliard and his investment company have expended in the payment of taxes and assessments, and for the repair and care of the property and the satisfaction of the Harris mortgage, the sum of $4,701.54. From tenants since the ouster of the Converses, it has received the sum of $912.18, leaving a balance expended over receipts of $3,789.36. On the trial, the Hilliard Investment Company offered to surrender the premises on the payment to it by the appellant of this sum.

The court made an interlocutory judgment decreeing that, if appellant should, within ninety days, pay into court for the benefit of the Hilliard Investment Company the sum of $3,789, with interest from date of judgment, a decree would be entered awarding the title and possession of the premises to appellant, and in the event of failure so to do, then judgment should be entered in favor of respondents and against appellant. The appellant elected not to make the payment and waived the period of ninety days allowed, whereupon final judgment was rendered decreeing that appellant

take nothing by her action, that the community consisting of appellant and A. B. Converse have no title or interest in the premises and no right to possession thereof, and that title to the premises be quieted in the Hilliard Investment Company.

The appellant's action is founded on the theory that she acquired a community interest in the premises by virtue of the executory contract of sale from Kelley to her husband, and that, never having joined in any relinquishment or other disposition of her rights under such contract, she still holds the community interest in the lots.

But we cannot think this contention tenable. Its fallacy lies in the assumption that the community had such title to the property in virtue of the contracts as could not be forfeited without the consent of the community, or after notice to the community. Such, however, is not the rule. Contracts of this sort confer title in the contract purchaser only when fully performed on his part, or performance in so far as it is capable of being performed on his part. Until that time, such contracts are merely initiatory of title. By performance, they ripen into title, either legal or equitable, but fail of either by nonperformance. Since, therefore, the husband alone may enter into them on behalf of the community, so he may forfeit them on its behalf before performance is completed, either by consent, or by failing to comply with the conditions on his part to be performed. Such in effect was our holding in the case of *Tieton Hotel Co. v. Manheim*, 75 Wash. 641, 135 Pac. 658. This case in its facts is parallel in many respects to the one at bar. Manheim, a married man, entered into a contract for the purchase of certain real property, on a partial payment plan, which contract provided that time was the essence thereof, and that forfeiture could be claimed on default. Subsequently Mrs. Manheim died, and default was made in the payments on the contract price. The vendor served a notice of forfeiture upon Manheim because of such nonpayment and with his consent re-

took possession of the property. The subsequent action was one to quiet title. The heirs of Mrs. Manheim defended on the ground that notice to Manheim was not notice to them and that they still had the right to perform and take title. Speaking to the question, we said:

"The main contention of the appellants is that, under the contract, the community consisting of William Manheim and wife, acquired a community interest in the lots, and that, on the death of Mrs. Manheim, her community interest passed immediately to her children, and that the forfeiture of the contract was not binding upon the children of William Manheim and wife, and, therefore, the children at this date have the right to specifically enforce the contract.

"It is a settled rule in this state that executory contracts for the sale and purchase of land do not convey title, either legal or equitable.  .  .  .

"It is, therefore, plain from our previous holdings upon contracts of this character that, until the contract was performed, no title, either legal or equitable, passed from the vendor to the community;  .  .  .  .

"Conceding that whatever interest William Manheim acquired in the contract, or the sale to which it referred, was a community interest, that interest necessarily depended upon the fulfillment of the contract. William Manheim was the agent of the community, and was authorized under the statute to have the management and control of the community property. Rem. & Bal. Code, §§ 5917, 5918 (P. C. 95 §§ 27, 29). And until the interest which he acquired at that time became an absolute interest, and vested some sort of title in the community, the community had no greater interest than William Manheim himself. It is plain, we think, that William Manheim, having acknowledged that the contract was at an end, and that all rights thereunder had been forfeited, is in no position to claim any interest in the contract, or in the real estate to which it referred. And therefore it seems plain that, this claim being made through him, the community has no interest. For whatever interest the community acquired, it acquired through the act of William Manheim. The interest of the community was incipient, and until it ripened into a completed interest, the community acquired nothing. It seems too plain for argument that, if

Mrs. Manheim had survived the period of the contract, and William Manheim, during her lifetime, had made the acknowledgment which he did make, she would have been bound thereby; and that the contract as to both William Manheim and his wife would have been entirely avoided."

On the authority of the foregoing case, we hold that such interest as the appellant acquired in the contract as a member of the community of Converse and wife was forfeited by the noncompliance of the contract by the husband, and the subsequent declaration of forfeiture and reentry by the vendor. This view of the case renders it unnecessary to discuss the other questions suggested in the briefs.

The judgment is affirmed.

MORRIS, C. J., MOUNT, CHADWICK, and ELLIS, JJ., concur.