[No. 15744.    Department One.    September 8, 1920.]

CHARLES G. SCHAEFER, *Appellant*, v. E. F. GREGORY COMPANY, *Respondent*.[1]

EMINENT DOMAIN (93)—PERSONS ENTITLED—VENDEE—EXECUTORY CONTRACT. The vendee in a forfeitable executory contract for the purchase of land acquires no title to or interest in the land until the contract is fully performed, and hence is not a "party interested" or entitled to the award in condemnation proceedings to acquire land for the Camp Lewis army post, under Laws of 1917, p. 2, ch. 3.

VENDOR AND PURCHASER (160)—REMEDIES OF PURCHASER—RECOVERY OF PRICE—FAILURE OF TITLE. The vendor's breach of the contract through inability to convey title by reason of the condemnation of the property for the uses of the government, constitutes a complete failure of consideration, entitling the vendee to recover all sums paid by him on the contract.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered August 1, 1919, upon sustaining a demurrer to the complaint, dismissing an action on contract. Reversed.

*Hayden, Langhorne & Metzger*, for appellant.

*Sullivan & Christian*, for respondent.

MACKINTOSH, J.—The respondent, then the owner of certain real property situated in Pierce county, Washington, on January 28, 1914, entered into an executory contract with appellant for its sale, the purchase to be made on the installment plan, the contract providing for forfeiture in the event that the appellant should fail to make any of the payments when due; time was made the essence of the contract, and respondent agreed that, upon the payments being made as provided for, and the performance by the appellant of his agreement, "the said party of the first part hereby covenants and agrees to convey to said party of the

[1] Reported in 192 Pac. 968.

second part by good and sufficient warranty deed.''
The contract was recorded on January 2, 1917, and the
appellant faithfully performed all the obligations
called for by the contract and made tender of the full
amount due and demanded his deed, which was refused
for the reason that, under Ch. 3, Laws of 1917, p. 2, the
property had been condemned by Pierce county in De-
cember, 1918, for the purpose of the Camp Lewis army
post site. The award made by the jury was paid into
court and the decree was entered. Upon respondent's
failure to deliver the deed to the appellant, the latter
began this action to recover the payments that he had
made on the contract and the taxes paid by him, with
interest. A demurrer was interposed to the complaint
and sustained, and judgment of dismissal was there-
upon entered. This appeal is prosecuted therefrom.

In the condemnation proceedings both respondent
and appellant were made parties, but the appellant
made no appearance. The jury returned a verdict in
the sum of $584, which was an amount less than the
appellant had paid on the contract price at the time of
the entry of the decree of appropriation.

The respondent contends that the appellant's only
remedy was to apply in the condemnation proceedings
for the award. The appellant contends that the re-
spondent, having breached its contract, and being un-
able to perform, that he, the appellant, is entitled to
recover all the sums paid by him on the contract, for
the reason that there has been an entire failure of con-
sideration.

The question as stated by the appellant is this: Is
the holder of a forfeitable executory contract for the
purchase of land an ''owner, encumbrancer, or other
party in interest,'' within the meaning of Ch. 3, Laws
of 1917, p. 2, and consequently obliged to look to the

jury's award as his only source of reimbursement. Or, stating the question in another way, it is whether the parties to an executory contract of sale, who are duly and regularly made parties to a condemnation proceeding under Ch. 3, Laws of 1917, p. 2, are confined to an adjustment of their interests in the condemnation suit, and must they look to the proceeds of the judgment in that suit for whatever compensation they are entitled to by reason of the vendor's loss of the land he has agreed to convey; or, whether the vendee, under an executory contract, can ignore the condemnation proceedings and bring an independent action against the vendor because the vendor has been rendered unable to convey by reason of the condemnation.

Where the vendor is unable to perform his contract and make delivery as he has agreed to, the vendee is entitled to recover the money which he has paid on the contract, and such damages as he may have sustained by reason of the vendor's breach. *Williams v. Hillman Investment Co.*, 48 Wash. 695, 94 Pac. 653; *Munson v. McGregor*, 49 Wash. 276, 94 Pac. 1085; *Herbert v. Hillman*, 50 Wash. 83, 96 Pac. 837; *Colpe v. Lindblom*, 57 Wash. 106, 106 Pac. 634.

This general rule has not been applied to facts such as we have presented in this action. Here the vendor's failure to convey has been occasioned by the assertion of the sovereign power of its right to take the property for public use, and the impossibility of performance is due to no fault of the vendor. In *Cowley v. Northern Pac. R. Co.*, 68 Wash. 558, 123 Pac. 998, 41 L. R. A. (N. S.) 559, this court held that, where the performance of a contract became illegal by the passage of a statute, the contractor could not be held for damages for failure to further perform the contract; the court saying:

"The plaintiff conveyed the property to the defendant upon the faith of defendant's promise to perform

conditions which were then wholly lawful but which, after a substantial part performance, became unlawful without any contributing cause upon the part of either party. The full performance has not been arrested by any act or omission of the defendant, but by the Congress of the United States acting within its constitutional powers. It follows from what has been said, that the defendant cannot be mulcted in damages because of, and only because of, its observance of a law making further performance of the contract on its part impossible."

It is argued here that the appellant is not entitled to recovery because the respondent, by no fault of its own, but because of the action of a superior authority, has made the further performance of the contract by it impossible.

The *Cowley* case is to be distinguished by the fact that the performance of the contract had been made illegal and contrary to public policy by statutes passed subsequent to the making of the contract, whereas here Ch. 3, Laws of 1917, p. 2, which permitted the condemnation of this property, did not make the performance of the contract illegal or contrary to public policy, but merely prevented the respondent from performing because the condemnation disposed of the subject-matter of the contract. The act removed the land from the sphere of individual contract, and did not render the contract illegal or violative of public policy. In this case the appellant is not seeking damages for the respondent's failure to do anything that has been made unlawful; he is only seeking the restoration of that which he has paid. The respondent's agreement was to convey certain land when certain payments had been made by the appellant. The payments were made, the conveyance was not, and when that conveyance was made impossible of performance, the appellant argues that there was then a failure of consideration

for the payments that had been made, and that he should be entitled to recover the same in an action for money had and received.

Section 9, Ch. 3, Laws of 1917, p. 7, provides that, in the condemnation petition, the name of each and every "owner, encumbrancer or other person or *party interested*" or in possession of the property, shall be made a party to the action, and that a jury shall be impaneled to determine the compensation of "owners . . . and . . . all tenants, encumbrancers and *others interested*," for the taking of the property.

Section 14, Ch. 3, Laws of 1917, p. 11, provides further:

"The jurors at such trial shall make in each case a separate assessment of damages which shall result to any person, corporation, or company, or to the state, or to any municipal or public corporation or other party, by reason of the appropriation and use of such land, real estate, premises, or other property by such county, as aforesaid, and shall ascertain, determine and award the amount of damages to be paid to said owner or owners respectively, and to all tenants, encumbrancers, and *others interested* for the taking or injuriously affecting such land, real estate, premises, or other property . . . Judgment shall be entered by the court . . . for the amount of the damages awarded to such owner or owners respectively, and to all *tenants, encumbrancers, and others interested,* for the taking or injuriously affecting such land . . ."

Section 16, Ch. 3, Laws of 1917, p. 12, provides further:

"The court . . . shall enter an order that Pierce county shall have the right at any time thereafter to take immediate possession of or damage the property in respect to which such compensation shall have been so paid, and thereupon the legal title to any property so taken shall be vested in fee simple in Pierce county . . ."

Section 18, Ch. 3, Laws of 1917, p. 13, further provides:

"Whenever claim is made to any money paid into court, as provided in this act, the claimant may apply to the court therefor, and upon furnishing evidence satisfactory to the court that he or it is entitled to the ·same, the court shall make an order directing payment to such claimant of the portion of such money he or it shall be found entitled to, after first deducting the amount found to be due against the particular tract of land . . . but, if, upon application, the court, or judge thereof, shall decide that there are conflicting claims to the award, he may proceed to hear and determine the same."

Section 21, Ch. 3, Laws of 1917, p. 14, also provides:

"Owing to lack of proper and adequate military training and preparedness, the public peace and safety are and will continue to be endangered, and emergency exists and this act is enacted for the support of the federal and state governments, as well as under the police power of the state, declared to be and is necessary for the immediate preservation of the public peace and safety, and shall take effect immediately."

From these sections the respondent argues that the legislature intended that every one having a right or interest in the property should be made a party and their rights determined in the condemnation suit. The appellant argues that the statute does not include one holding an executory contract of sale.

It becomes, therefore, necessary to determine whether the holder of a forfeitable executory contract for the purchase of land is a "party interested" in the land sought to be condemned.

We have held that a contract such as the one before us, while it remains executory and forfeitable, creates no interest in the land in the vendee, and that he has no legal or equitable title to or interest in the land

until the contract has been fully performed; that a judgment obtained against the vendee would not be a lien upon such property. *Martin v. Matthews,* 10 Wash. 176, 38 Pac. 1001; *Pease v. Baxter,* 12 Wash. 567, 41 Pac. 899; *Churchill v. Ackerman,* 22 Wash. 227, 60 Pac. 406; *Johnson v. Sekor,* 53 Wash. 205, 101 Pac. 829; *Younkman v. Hillman,* 53 Wash. 661, 102 Pac. 773; *Tieton Hotel Co. v. Manheim,* 75 Wash. 641, 135 Pac. 658; *Converse v. LaBarge,* 92 Wash. 282, 158 Pac. 958.

As was said in this last case:

"Contracts of this sort confer title in the contract purchaser only when fully performed on his part, or performance in so far as it is capable of being performed on his part. Until that time, such contracts are merely initiatory of title. By performance they ripen into title, either legal or equitable, but fail of either by nonperformance."

Again in *Younkman v. Hillman, supra,* it was said:

"The obligation of the vendor in these contracts is similar to that of the obligor in a bond for a deed, and it is held that 'a bond to convey land is not a title, but simply a contract to convey title' . . . We cannot regard respondents as purchasers, there being no investment of any title in them; nor, under the contract, any passing of title until a compliance with its terms."

The effect of these decisions is to hold that, under such contracts, the vendee has no interest in the land; that he has no right *in rem,* but one *in personam* against the vendor in the event of breach upon the vendor's part. Under these decisions the vendee had no interest in the land at the time of the condemnation proceedings, and we cannot say that Ch. 3, Laws of 1917, makes any change in the law as to the persons who shall be made parties to condemnation proceedings or shall be entitled to the award in such proceedings.

Chapter 3, Laws of 1917, p. 2, differs, as far as the question we are here considering is concerned, in no way from the general statutes in relation to eminent domain proceedings (Rem. Code, §§ 891-936), as will be seen by reference to § 895, which provides:

"And the jurors at such trial shall make in each case a separate assessment of damages which shall result to any person, corporation or company, or to any county by reason of the appropriation and use of such land, real estate, premises or other property, and shall ascertain, determine and award the amount of damages to be paid said owner or owners respectively, and to all tenants, encumbrancers, and *others interested,* for taking such land, real estate, premises, or other property so taken."

Under this general statute it has been held that the owner of the fee at the time of the award is the only one entitled thereto. *In re Seattle,* 26 Wash. 602, 67 Pac. 250. In that case it was said:

"It has been uniformly held that the right to damages for an injury to property is a personal right belonging to the owners of the property, which will not pass by deed unless expressly conveyed."

See, also, *Kakeldy v. Columbia & P. S. R. Co.,* 37 Wash. 675, 80 Pac. 205; *Silverstone v. Harn,* 66 Wash. 440, 120 Pac. 109; *Carton v. Seattle,* 66 Wash. 447, 120 Pac. 111; *Damon v. Ryan,* 74 Wash. 138, 132 Pac. 871, Ann. Cas. 1917 A 286; *In re Twelfth Avenue South,* 74 Wash. 132, 132 Pac. 868, Ann. Cas. 1915 A 730.

"It is a settled general rule that when land is taken under the power of eminent domain, compensation therefor shall be paid to the owner of the fee at the time compensation is taken." 10 Am. & Eng. Ency. Law (2d ed.), p. 1188.

The cases establish that, under the general eminent domain statute, the vendor alone is entitled to the

award, and nothing in the language of Ch. 3, Laws of 1917, indicates that the general rule should not apply in the instant case, and the vendor must suffer the loss if the award is not as large as the price for which he had contracted to convey, and is entitled to the profit if the condemnation jury values the property at more than he has agreed to sell for.

The condemnation provided for by Ch. 3, Laws of 1917, p. 2, was a special act to aid the Federal government in the establishment of any army post necessitated by the existence of a state of war, and presents no reason why the court should give a different interpretation to the language of that act than has already been given to the general condemnation acts, nor any reason for changing the rule long established as to the relation existing between vendors and vendees in executory forfeitable contracts for the sale of real property.

The respondent cites *Stevenson v. Loehr*, 57 Ill. 509; *Burns v. Koochiching Co.*, 68 Minn. 239, 71 N. W. 26; *Clarke v. Long Island Realty Co.*, 126 App. Div. 282, 110 N. Y. Supp. 697, which are cases from jurisdictions holding that, under an executory contract of sale of real estate, the vendee becomes an equitable owner, subject only to the right of the vendor to the payment of the purchase price. Under our decisions which hold that the vendee has no such right, these cases can have no authority.

The respondent also calls attention to the case of *Olson v. Seattle*, 30 Wash. 687, 71 Pac. 201, where this court allowed the vendee to maintain an injunction where the public authorities were seeking to take the land for public uses without making compensation. An examination of that case will show that, as a matter of fact, the contract there was no longer executory; that the vendee had completed the payments and had re-

ceived deeds to a part of the land, and that there was some delay in the delivery of the other deeds. The court held that, under these facts, it being an equitable action, the vendee was the owner, and coupled with this was the fact that he was in possession. In the latter part of the opinion it is stated:

"... one holding real property under contract of purchase with the owner, and who has paid a substantial portion of the purchase price, has such an interest therein as will entitle him to compensation before the property can be taken or damaged for a public use."

This language is not necessary to the decision of the case, the court having already found, as we have indicated, that the vendee, having done everything necessary to be done, he would in equity be considered the real owner, and furthermore, the language quoted is out of line with the decisions which we have hereinabove cited holding to the contrary. The case cannot be controlling here for that reason.

We come to the conclusion, therefore, that, under the well settled law of this state, the vendee in a forfeitable, executory contract of sale has no legal or equitable interest in the property, the subject-matter of the contract, and although the contract may be of record, he is not one of the parties necessary to the condemnation proceedings, and that a condemnation proceeding having prevented the performance by the vendor of his covenant to transfer when the full payments should have been made, does not create an interest in the award in favor of the vendee, and that performance having been made impossible by the assertion of the sovereign's right of condemnation, that thereby there has been created a failure of the consideration such as entitled the vendee to the return of the money which he has paid in compliance with the contract. For these

14—112 WASH.

reasons, the demurrer should have been overruled. Judgment is reversed.

HOLCOMB, C. J., PARKER, MAIN, and MITCHELL, JJ., concur.