[No. 8110. Department One. January 26, 1910.]

## CHARLES H. COLPE et al., Respondents, v. ERIK O. LINDBLOM et al., Appellants.[1]

VENDOR AND PURCHASER—RESCISSION BY VENDEE—TENDER OF PRICE —NECESSITY. Where the vendor's wife was insane and incapable of executing the deed, the vendee may rescind a contract for the purchase of community property without tender of the unpaid purchase price; since a vendor does not have a reasonable time to obtain title.

VENDOR AND PURCHASER—RESCISSION BY VENDEE—WAIVER—TIME FOR PERFECTING TITLE. Where it develops that a vendor's wife is insane, the vendee's request that a guardian be appointed to make the conveyances waives his right to a rescission and grants a reasonable time within which to perfect the title.

SAME—REASONABLE DILIGENCE. A vendor did not proceed with reasonable diligence in perfecting his title, so as to avoid a rescission by the vendee, where he was requested in May to secure the appointment of a guardian to make conveyance for his insane wife, the petition therefor was not filed for three months, and an order of sale not made until late in December; especially where just before the order for sale he insisted upon the vendee's taking title as it was.

SAME—TENDER OF PERFORMANCE. After notice of rescission by the vendee for failure to perfect the title within a reasonable time, tender of performance by the vendor comes too late.

HUSBAND AND WIFE—PROPERTY—DOMICILE. The law of the domicile controls personalty acquired during coverture.

HUSBAND AND WIFE—COMMUNITY PROPERTY—ACQUISITION IN AN-OTHER STATE—WHAT LAW GOVERNS—PRESUMPTIONS. Where a husband and wife, married in Arizona seventeen years ago, were keeping house at Nome, Alaska, where his earnings were his separate property, and there was nothing to show whether Nome was their

[1] Reported in 106 Pac. 634.

domicile or merely their temporary abode, it will be presumed that the domiciliary law was the same as our own, and that the property was community property.

ESTOPPEL—AS TO TITLE—BY PLEADING—HUSBAND AND WIFE— VENDOR AND PURCHASER. Where a vendor, in order to complete a sale, secured the appointment of a resident guardian for his insane wife in California, stating in the petition that the property was community property, he will be estopped from asserting that it was his separate estate and that his wife had no interest therein.

VENDOR AND PURCHASER—MARKETABLE TITLE. A contract to convey a good marketable title, free from defects, as shown by abstract of title, is not fulfilled by a deed of land acquired during coverture, executed by the husband alone, whose domicile is not disclosed, his wife being insane and his claim to the land as separate estate not being deducible of record, as it is not free from probable litigation.

VENDOR AND PURCHASER—RESCISSION BY PURCHASER—DECREE—RELEASE OF CONTRACT. Upon entering a decree for the rescission of a contract for the sale of land, the parties must be placed in *status quo*, and the court should direct the vendee to execute a release of the contract.

Appeal from a judgment of the superior court for King county, Gay, J., entered January 25, 1909, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

*Roberts, Battle, Hulbert & Tennant* and *C. J. France,* for appellants.

*Edgar C. Snyder* and *George E. de Steiguer,* for respondents.

GOSE, J.—On January 31, 1907, the appellants entered into a written contract with the respondents in the words following, omitting signatures and acknowledgment:

"REAL ESTATE CONTRACT.
                    "San Francisco, January 31, 1907.
"Received from Herbert V. Perry and Chas. H. Colpe the sum of five thousand ($5,000) dollars as deposit for the purchase by them from us of the Washington Block, situated on First Avenue, Seattle, King County, Washington, legally described as follows:
"The purchase price of said property to be two hundred

fifteen thousand ($215,000) dollars, net to us, payable by purchasers as follows: $5,000 deposit money, receipt whereof is hereby acknowledged; thirty thousand ($30,000) dollars cash on delivery by us to purchaser of warranty deed; forty thousand ($40,000) dollars cash on or before one year thereafter, with interest thereon at six per cent per annum, interest payable semi-annually; forty thousand ($40,000) dollars cash on or before two years thereafter at six per cent per annum, interest payable semi-annually; and one hundred thousand ($100,000) dollars by assumption of first mortgage now against said property payable on or about January 1st, 1908, and bearing interest at 5 per cent per annum, payable quarterly. Abstract of title, certified to said purchasers showing good and marketable title in said property and the whole thereof in us, to be delivered to purchasers within ten days after March 28, 1907, and said purchasers shall be allowed fifteen (15) days for examination thereof, wherefor they agree to complete the purchase of said property in accordance herewith, and thereunto pay to us the sum of thirty thousand ($30,000) dollars additional cash and therefor to execute to us a second mortgage of eighty thousand ($80,000) dollars payable as hereinbefore provided for. In case title is not good, or there are any defects of title as shown by said abstract, and said title cannot be made good or said defects of title cannot be cured, then the said $5,000 cash paid to us on the signing of this receipt shall be returned to said purchasers and this receipt be cancelled. This receipt consists of two (2) pages and this page is the second page thereof. In case title is good and marketable and with no defects and if purchasers shall then fail to close the deal and pay $30,000 cash as herein agreed, then said purchasers will forfeit to us said $5,000 cash and this receipt shall be void and of no effect. Purchasers to receive rents of said property from the date of deed to them and to rebate to us unearned premium of insurance policy. Property to be delivered free of any taxes or assessments or liens to date of deed. Interest to be paid by purchasers from date of deed."

The abstract of title was delivered to the respondents in due time, and by them submitted to their attorneys for examination. About May 1 the respondents ascertained that the wife of the appellant Dawson was insane and confined in

a sanitarium in the state of California. They thereupon con-
sented that a guardian be appointed for her, in order that her
interest in the property might be conveyed. The appellant
Dawson at first contended that his interest in the real estate
was his separate property. However, on May 25, he filed
in the superior court of King county an authenticated copy
of his letters of guardianship, theretofore issued in the
superior court of the county of San Francisco, state of
California. The respondents' counsel thereupon took the
position that it was necessary to have a resident guardian
appointed. Thereafter, and on August 13, a petition was
filed in the superior court of King county, in which the appel-
lant Dawson united, praying the appointment of a resident
guardian. On the same day a show cause order was entered,
fixing October 17 as the day for a hearing on the petition.
On November 1, an order was entered appointing a resident
guardian. On December 17 appraisers were appointed, and
on December 19 an inventory was filed and the estate ap-
praised. On December 24 a petition for a show cause order
and a sale of the real estate was filed, and on December 26 a
show cause order was made and entered, fixing February 7,
1908, as the date for hearing on the petition. On December
26 the respondents, not having notice of the filing of the last
named petition or the entry of the order thereon, gave the
appellants written notice that they elected to rescind the
contract which, omitting signatures, is as follows:

                                        "December 26, 1907.
"To Erik O. Lindblom and Richard B. Dawson,
    "San Francisco, California:
    "You and each of you, will take notice that, because
of your having failed, refused and neglected to perform
the contract you made with us on the 31st day of January,
1907, for the sale and transfer to us of the Washington Block
on First Avenue, in the city of Seattle, Washington, free
from all encumbrances, except a certain mortgage specified in
said contract, we have elected to rescind and do hereby rescind
the said contract and every part thereof; and you will also
take notice that, in addition to the sum of five thousand dol-

lars ($5,000) paid to you in consideration of the execution of said contract, we have suffered other losses on account of your said breach of contract, in the sum of seven thousand dollars ($7,000) and we do hereby demand of you that you forthwith pay to us twelve thousand dollars ($12,000)—being the sum of said consideration and said additional loss or damage—together with such legal interest as may be properly chargeable on the various portions of said sum."

On January 17, 1908, the wife of the appellant Dawson was discharged from the sanitarium, and on April 1 the appellants tendered performance. On January 25 this suit was commenced for the recovery of $5,000 paid by the respondents on the contract, terminating in a judgment in their favor. The judgment has been brought here for review by an appeal.

The first error assigned is that, under the contract, the payment of the purchase price and the execution and delivery of the deed are concurrent acts, and that the respondents, before declaring a rescission, were required to tender performance. Admitting this as a general rule, the inquiry is, is it applicable in this case. It is conceded, that the appellants own the property in equal shares; that the appellant Dawson was a married man at the time he acquired the property, and that, at the time of the execution of the contract and continuously thereafter until after the respondents gave notice of their election to rescind, his wife May Dawson was insane and incapable of doing business. It is well settled in this state that property acquired by either spouse after marriage is presumed to be community property. Assuming for the present that the interest of the appellant Dawson in the property was of a community nature, it becomes apparent that a tender of performance would have been a useless thing. The appellants, as the respondents knew, could not then convey a good, marketable title free from defects, as they had engaged to do.

"Readiness and willingness to perform on their part would take the place of actual performance, and a formal tender

was waived." *Kane v. Borthwick*, 50 Wash. 8, 96 Pac. 516, 18 L. R. A. (N. S.) 486.

Sec, also, *Sutthoff v. Maruca*, ante p. 102, 106 Pac. 632; *Hartley v. James*, 50 N. Y. 38.

The court found:

"(5) That upon the plaintiffs ascertaining the defects in the title to said property, they notified defendants thereof and demanded of the defendants that they perfect their title to said property, in order that they might convey good title to the plaintiffs according to the terms of said contract.

"(6) That, although the plaintiffs were at all times ready, willing and able to perform said contract, and had offered so to do, the defendants had failed, refused and neglected to perfect their title to said property, and at none of the times mentioned in the complaint, nor at any of the times down to this date have the defendants had good and marketable title to said property."

The finding that the respondents were ready and willing to perform is abundantly supported by the evidence. Upon discovering the insanity of the wife, about May 1, 1907, they demanded that the appellants proceed with diligence in order that they might convey a marketable title. Several conferences were held between counsel for the respective parties and, tiring of the delay, the respondent Perry went to San Francisco about the middle of December, 1907, to ascertain from the appellants the cause of the delay. He testified that the appellant Dawson finally said to him that he must take such title as the appellants could then convey, and that his wife "could write as well as he could, even though she were insane;" that she would unite in the deed. It is obvious that the deed of an insane woman would not convey a marketable title. When the respondents ascertained that the wife of one of the parties had been adjudged insane, they could have rescinded at once. While time is not made the essence of the contract, the appellants were bound to convey within a reasonable time.

"If a vendor agrees to convey title at a given time, and has no title when the date of performance arrives, the ques-

tion of a reasonable time for preparing a deed does not enter into the case. There is a breach of the agreement to convey for which the purchaser may at once rescind." *Walsh v. Colvin*, 53 Wash. 309, 101 Pac. 1085.

By analogy the rule thus announced applies to this case. The appellants did not have a good, marketable title which they could convey, either when the contract was made or at the time of the rescission.

The next question to be considered is, Did the respondents waive their right to rescind by calling upon the appellants to perfect a marketable title? The attorney who conducted the negotiations for the respondents testified that the appellants' counsel assured him that the guardian's sale would be effected within sixty or ninety days. This assurance was given some time in May, 1907. The latter testified that the time stated was only an estimate. We think the answer is that they consented that the appellants should have a reasonable time in which to procure the title at a guardian's sale. The record, however, discloses that the appellants did not proceed with reasonable diligence. Had they done so, the guardian's sale could have been effected, if at all, before · the date of the election to rescind.

Referring again to the testimony of the respondents' counsel, we find that about May 25 he demanded the appointment of a local guardian, and refused to accept any title proceeding from a sale made by the foreign guardian. The petition for the appointment of a resident guardian was not filed until some three months later. It will be observed that the consideration to be paid for the property was $215,000. Admittedly the respondents could not be required to hold themselves in readiness indefinitely to pay this sum. Moreover the evidence tends to show that the appellant Dawson, a few days before the rescission, notified respondents that they must accept the title as it stood or not take it at all. He denies that he made this statement, but its truth is in harmony with the act of the respondents in

giving notice of the rescission a few days later. We think the respondents were entitled to rescind on the ground of lack of reasonable diligence in the prosecution of the guardianship proceedings, and on the further ground that the appellants insisted on their taking a defective title. It follows that the subsequent tender of performance came too late to be of any avail to appellants.

In *Hawes v. Swanzey*, 123 Iowa 51, 98 N. W. 586, cited by the appellants, it was held that, when the vendees discovered a defect in the title and did not demand a return of the advanced payment, and by frequent inquiries as to the progress made in the efforts of the vendor to perfect title they impliedly consented to a reasonable time to enable the vendor to cure the defects, and that having thus acquiesced in the delay "until the title was in fact perfected according to their demands and until plaintiff was fully prepared to comply with the contract on his part, equity will not allow defendants to assign that delay as a reason for absolving them from its performance on their part." In *Bales v. Williamson*, 128 Iowa 127, 103 N. W. 150, also cited by the appellants, the vendee made the first payment when the contract was executed, and the second payment August 15, 1902. The final payment was due March 1, 1903. In November, 1902, the vendors furnished the vendee an abstract of title, which was submitted to an attorney, who gave an opinion pointing out various defects in the title. In February, 1903, a corrected abstract was given to the vendee. On February 28 the vendor tendered a warranty deed, and on March 3 demanded payment. The vendee declined to make payment, insisting that the title was still defective. On March 13 the vendee gave the abstract to another attorney who, on March 16, advised that the defect be cured by an action to quiet title. The vendors, acting upon this advice, commenced an action which resulted in a decree quieting the title on September 2, 1903. Pending the action and on July 27, the vendee com-

menced an action to rescind the contract and to recover the purchase money paid thereon. It was held that, the action to quiet title having been commenced at the instance of the vendee and having been conducted to a judgment "with due diligence," he could not change front and rescind.

The appellants urge that the interest of the appellant Dawson in the premises was his separate property. The evidence which forms the basis for the contention is that the money which Dawson put into the property was earned by him at Nome, Alaska, and that, under the laws of that place, his earnings were his separate estate. The record discloses that both the husband and wife were at Nome, he working at different things, as she expressed it, and she keeping house. The wife further testified that the marriage occurred at Phoenix, Arizona, about seventeen years before the trial. We have not been able to discover from the record whether Nome was their domicile or merely their temporary abode. As we have stated, in this state the presumption is that all property acquired by either spouse after marriage is community property. This rule is so well established that the citation of authority is not necessary. The law of the domicile controls as to personal property acquired during coverture. *Thayer v. Clarke* (Tex. Civ. App.), 77 S. W. 1050. In the absence of evidence as to the domicile of the parties at the time the money was earned, the presumption will be indulged that the domiciliary law is the same as our own. *Clark v. Eltinge*, 29 Wash. 215, 69 Pac. 736. In *Elliott v. Hawley*, 34 Wash. 585, 76 Pac. 93, 101 Am. St. 1016, cited by the appellants, the record shows that the husband had not been in this state for ten years preceding the trial, and that the wife, who was asserting the separate character of the property in litigation, had never been a resident of this state. In *Brookman v. Durkee*, 46 Wash. 578, 90 Pac. 914, 123 Am. St. 944, 12 L. R. A. (N. S.) 921, also cited by the appellants, the opinion states that the husband and wife were domiciled and had their

residence in the state of New York when the consideration for the property was acquired.

After the respondents had refused to take the title without the wife's interest being conveyed, as we have pointed out, a resident guardian was appointed. In the petition for the appointment, united in by the husband, it was alleged that the interest of the husband and wife in the property was a community one. In the light of the acts of the appellant Dawson and the averment as to the nature of the title in his sworn petition, he will not now be heard to say that the wife had no interest in the property. Moreover, the contract required the appellant to convey a good, marketable title, free from defects, and it cannot be said that such a title could be conveyed by the deed of the husband alone. A title to be a marketable one must be one which a prudent investor, well informed as to the facts and their legal bearing, ready and willing to perform his contract, would be willing to accept. Such a title must be free from probable litigation and, except in rare cases, must be fairly deducible of record. 29 Am. & Eng. Ency. Law (2d ed.), 613. A "good title free from incumbrances as shown by a complete abstract of title" must be title disclosed by the records. A title based upon an *ex parte* affidavit showing the names of the heirs of the deceased owner is not such a title. *Crosby v. Wynkoop*, 56 Wash. 475, 106 Pac. 175; *Watson v. Boyle*, 55 Wash. 141, 104 Pac. 147.

It is finally contended that the respondents could not rescind without first cancelling, or offering to cancel, the contract which had been filed for record. The judgment recites that the contract has been rescinded by the respondents, and that it is of no further force or effect. The complaint sets forth the contract *in haec verba*, and alleges that the respondents have elected to rescind. The doctrine of *status quo*, as applied to this class of cases, is that the adverse party must be placed in substantially the same position he occupied before entering into the contract. This

may be provided for in the judgment. Maupin, Marketable Titles, § 279; *Sanford v. Royal Ins. Co.,* 11 Wash. 653, 40 Pac. 609. The judgment is a bar to any future action between the parties to the action and those concluded by it. *Carter v. Fox* (Cal. App.), 103 Pac. 910. Following the rule announced in *Ankeny v. Clark,* 1 Wash. 549, 20 Pac. 583, we will direct that the judgment below be modified so as to suspend the issuance of an execution until the respondents shall execute a sufficient release of the contract and deposit it with the clerk of the superior court for delivery to the appellants.

The Washington Block is a business block situate on First avenue in Seattle. At the time of the execution of the contract, there were at least two unexpired leases upon the property, which the respondents insisted, and still insist, were incumbrances. They further urge that it was the duty of the appellants to procure their release in order to make the title marketable. Several conferences were held between the attorneys for the respective parties at which the leases were discussed and tentative propositions were made and considered. A reading of the evidence convinces us, however, that there was no meeting of minds of the contracting parties in this matter subsequent to the execution of the contract. The leases, under the holdings of this and many other courts, were an incumbrance upon the property, and the appellants' title was not a good, marketable title free from defects. However, the concluding clause of the contract provides: "Purchasers to receive rents of said property from the date of the deed to them." Whether this provision modifies that part of the contract providing for a good, marketable title is an interesting and important question which we do not find it necessary to decide. The case will be remanded with directions to modify the judgment so that the issuance of the execution will be suspended until the respondents have filed a release of the contract as herein provided. In all other respects the judgment will be affirmed.

RUDKIN, C. J., FULLERTON, MORRIS, and CHADWICK, JJ., concur.