[No. 13679. Department Two. May 16, 1917.]

HARRY B. GARRISON *et al., Appellants,* v. WILLIAM NEWTON *et al., Respondents.*[1]

PLEADING — AMENDMENT — AT TRIAL — DISCRETION. It is not an abuse of discretion to permit a trial amendment to the answer that is germane to the issues, objected to on the ground of surprise, where the court offered to grant a continuance, which plaintiff declined, preferring to go to trial.

VENDOR AND PURCHASER—RESCISSION BY VENDEE—TIME TO PERFECT TITLE—WAIVER. Where time is not of the essence of the contract, the vendor has a reasonable time within which to perfect his title, and two and one-half months will not be held an unreasonable time, where the vendee did not promptly rescind and was not injured by the delay, but acquiesced in the delay in order to allow the vendor to save expense, until the arrangements were being brought to a head.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered May 19, 1916, upon findings in favor of the defendants, dismissing an action for rescission, tried to the court. Affirmed.

[1]Reported in 165 Pac. 90.

*William L. Waters*, for appellants.

*John H. Perry* and *Daniel Landon*, for respondents.

Fullerton, J.—On November 29, 1912, William Newton and Katherine S. Newton, his wife, as vendors, entered into an executory contract with Harry B. Garrison and Katherine S. Garrison, his wife, as purchasers, for the sale of "the following described lands and premises, situated in Wasco county, state of Oregon, to wit: The east 25 acres of the northeast quarter of the northeast quarter of section 21, in township 1 north, range 13 east." The terms and conditions agreed upon were as follows:

"The consideration therefor is the sum of $2,000, of which $500 has been paid in cash, the receipt whereof is hereby acknowledged, $500 shall be paid on or before one year after the date hereof, $500 shall be paid on or before two years after the date hereof and $500 shall be paid on or before three years after the date hereof, said deferred payments to bear interest at the rate of seven per cent per annum, payable annually, principal and interest to be paid at the bank of French & Co. in Dalles City, Oregon.

"In addition to the conveyance of said property from the first parties to the second parties, the first parties further agree to sell and convey, and do hereby sell and convey unto said second parties for said consideration above mentioned, a right of way for a road from the northeast corner of said premises across property belonging to the first parties and described as the southwest quarter of the southwest quarter of section 15, township 1 north, range 13 east, which said right of way shall be along the west line of said land last described, and shall be 16 feet in width, and the first parties shall put the same in passable condition for traffic without expense to the second parties, provided, always, that in case the right of way along the west line of said land should not be practical or satisfactory to the second parties, then said right of way shall be located across said premises along a practical and satisfactory route to be determined by said parties. Otherwise the third man to be selected.

"The first parties hereby covenant and agree to and with the second parties that, upon payment of the sums of money

hereinbefore mentioned, that they will execute and deliver to said second parties, their heirs or assigns, or any one designated by them, a good and sufficient warranty deed for said premises above mentioned, and a deed for a right of way for a road as above provided, which said deed shall warrant the said premises free and clear from all incumbrances whatsoever, and the first parties agree to furnish to said second parties without additional compensation an abstract of title for said premises, showing the same to be the property of the first party free and clear from incumbrances thereon.

"The second parties, for themselves, their heirs and assigns, agree to and with the first parties to pay the sums of money above mentioned at the times and places hereinbefore stated."

The plaintiffs promptly met all payments falling due until final payment of $500, with interest, falling due November 29, 1915, which sum they deposited in escrow on that date in the banking house of French & Company, and made demand for their deed and abstract of title. A deed from plaintiffs to defendants and an abstract of title were transmitted by plaintiffs to the bank. Examination of the deed showed that it had been drawn upon a form used in the state of Washington, and was inadequate under the Oregon laws. An examination of the abstract disclosed that there was outstanding against the property a mortgage for $1,000, that the land had been sold for the delinquent taxes of 1912, and of the subsequent taxes, none except those for the year 1913 had been paid. The vendors were notified of the defects in the title, and demand was made that the title be cleared and a quitclaim deed executed for the right of way for a road provided for by the contract. At the same time, a proper form of deed for the state of Oregon and a quitclaim deed for the right of way were prepared and forwarded to the defendants for execution. The deeds were executed by defendants and returned to the bank, but defendants insisted the mortgage was only a technical matter and they would have it removed just as soon as they were in a position to do so. Finally, plaintiffs, on January 18, 1916, about fifty days after they had deposited

their final payment in escrow, notified defendants that, in view of their failure to perform, plaintiffs had determined to rescind the contract, and this action for rescission was instituted on February 10, 1916. The court found that plaintiffs were not entitled to a rescission, and gave judgment against them for the final payment due under the contract. The plaintiffs appeal.

Appellants assign as error the action of the court in permitting respondents to amend their answer on the trial by setting up an allegation that respondents had, from November 29, 1915, to February 16, 1916, with the full knowledge and consent of appellants, been busily engaged in perfecting title to the land in controversy, and that they had been delayed by reason of the dilatoriness of the attorney who represented both the mortgagee and the appellants; and by way of cross-complaint, asked judgment against appellants for the sum of $535. The amendment was objected to on the ground of surprise, and that it involved a new issue after the issues had been fully settled. The court offered to grant a continuance, on terms, to abide the final outcome. The appellants, in view of the ruling as to terms, preferred to go to trial. We think there was no prejudicial error committed. The amendment was germane to the issues in the case, and its allowance does not show any abuse of the discretion reposed in trial judges in such matters. Moreover, the plaintiffs proceeded with the trial without taking advantage of a continuance offered them by the court.

The only other error assigned is the granting of a nonsuit against appellants. This involves a consideration of the evidence, which is made up in large part of the correspondence passing between the parties and their attorneys, and necessitates a frequent recurrence to dates. The evidence shows that, at the time of entering into the contract in 1912, respondents were the owners of some sixty-eight acres of land in Wasco county, Oregon, upon which there was a mortgage of $1,000 to the Oregon State Land Board. In selling ap-

pellants twenty-five acres of this land, the contract provided for a right of way sixteen feet wide across the remaining forty, since otherwise appellants would have no outlet to the public highway. In June, 1915, respondents conveyed the forty-acre tract to one Payne, subject to the mortgage to the Oregon State Land Board and subject to his agreement with the appellants for a right of way across this tract. Payne gave respondents a purchase-money mortgage for $4,200 on the land thus conveyed to him. Some time in November, 1915, prior to the maturity of the contract between appellants and respondents, the latter, by letter, began efforts to secure the release of the twenty-five acre tract from the State Land Board mortgage. On November 30, 1915, the board responded as follows:

"Replying to yours of the 27th inst., in order to secure release of 25 acres from your mortgage, it will be necessary for you to take the matter up with W. H. Wilson, of The Dalles, attorney for the board in Wasco county, and when his recommendation is received as to the amount necessary to be paid, the matter will be submitted to the board for consideration."

On the same date as the letter from the board to respondents, Wilson, as the attorney employed by appellants to examine the title, wrote respondents as follows:

"Yesterday Henry B. Garrison was here to close up his contract with you. . . . He deposited the balance due from him, namely, $535, in the bank of French & Co., with directions to the bank to pay the money over to you upon the receipt of a deed for the land and a quit claim for the right-of-way for a road and an abstract for the 25 acres showing clear title. This morning French & Co. advised me that they had received the deed. I have examined the deed and I find that it is on a Washington blank, and that it is not good in this state. I have, therefore, prepared a new deed on an Oregon form, which I am sending herewith. Will you and Mrs. Newton please kindly execute this deed . . . and forward it to French & Co. . I have also prepared a quit claim deed for the right-of-way for a road mentioned in your con-

tract. . . . The 25-acre tract is covered by the state mortgage for $1,000, and before Mrs. Garrison can accept the deed from you the 25 acres must be released from the state mortgage. I do not know what the State Land Board will require as a payment in order to release this tract, but a payment of some kind will have to be made. I imagine that it will not be less than $250, probably more than that amount."

On December 3, respondents replied as follows:

"I have received your deeds and complied with your request. Now, regarding the state mortgage. The parties now owning the land object to me paying off the mortgage, as they bought the land subject to the state loan. So you can see my position, while I am willing to do anything I can to satisfy Mrs. Garrison. I understand the state of Oregon does not want their money, as long as the security is ample, and in this case there is no question as to the amount of security. Now, Mr. Wilson, I hope you will see your way clear to either release the 25 acres or accept the abstract without any payment on mortgage, as the abstract is good except a technical point."

This letter was answered by Wilson on December 6, to the effect that the board would not release the twenty-five acres without a payment of some kind, and suggesting that respondents pay off the whole mortgage of $1,000 to the state and protect themselves by taking an additional mortgage for that sum from Payne. Respondents replied on December 11, as follows:

"In reply to yours of recent date will say in answering your suggestion of paying off part of the mortgage, it seems as it would complicate matters considerably and I hope there will be some way found that we can get around this matter. As to paying the full amount of the mortgage, I am not in a position to do that at present, as you know money matters are a little close with all of us and as you know records show I sold that 40 acres subject to this mortgage to Mr. Payne, it would be very unjust to Mr. Payne for me to foreclose this mortgage, which I could not do. Now, Mr. Wilson, would you accept a contract from me guaranteeing and protecting Mr. Garrison in regard to the loan until I can pay off this

10—96 WASH.

mortgage, which I will do just as soon as I get payments from Mr. Payne. You know, I am holding a $4,000 second mortgage on that place. This contract can be made A1. Or if I will have the 40 acres re-appraised by some of the best citizens and farmers of your community and their re-appraisement shows ample security for the thousand dollars will you release the 25 acres, as we understand the matter is now up to you? Of course, this will be extra expense to me, but I am willing to bear this extra expense in order to adjust matters, providing Mr. Garrison will not accept the contract above mentioned. . Hoping one of the above suggestions will meet with your approval, I am."

On December 16 Wilson wrote respondents that the land board would not release the twenty-five acres without some kind of a payment, and on the following day again wrote them as follows: .

"Mr. Garrison objects to the title of the 25 acres which you sold to him because it is covered by the mortgage held by the State Land Board for $1,000, and also the property was sold for delinquent taxes for 1912, amounting to $14.60. Of course, these objections can be overcome by your procuring a release of the 25 acres from the State Land Board mortgage and by redeeming from the tax sale. Mr. Garrison objects to the right-of-way because the 40 acres across which the right-of-way runs is covered by the mortgage of the State Land Board for $1,000; also the second mortgage to you for $4,000, and it has not been opened up to travel as required by the agreement. As I understand Mr. Garrison, he refuses to accept either the deed for the 25 acres or the deed for the right-of-way for the road, for the reasons stated above."

Nothing further was done by respondent William Newton until after his return to Seattle from a business trip to Spokane, when, on January 10, 1916, he wrote Wilson as follows:

"I have just returned to the city and would now be very glad to have this matter straightened up. Now, Mr. Wilson, what is the least payment you will accept on the state mortgage or what will the state take in cash for the release of the 25 acres and right-of-way, leaving the mortgage as it is, as a foreclosure is possible this fall, and I would rather deposit a

certain amount of cash to the state credit than affect the mortgage on Mr. Payne's account. I hope you will be as lenient as possible."

Wilson answered that the least payment he could recommend for the board to accept for a release would be $250. On January 14, respondent Newton wrote Garrison as follows:

"Now, in regard to that abstract: I want to ask you if you will not accept the abstract as it is for the present, as it is absolutely good with only a technical point of law to cloud it, and that will be removed and everything clear just as soon as I am in a position to lift the $1,000 mortgage. You understand Mr. Payne assumed the full $1,000 state mortgage when he bought the 40 acres, and which is on record at The Dalles, showing that the 40 acres is held for the $1,000 state loan. I hold a $4,000 as second mortgage, so am also responsible. There is absolutely no danger to you. Or, to convince you of my honest efforts, I will be willing for you to hold back $50 or $100 until I can lift the mortgage. Now, Mr. Garrison, there is nothing gained for you or me by holding out on these trivial points; we could both work to better advantage if we are friends and understand one another. I will do anything within reason that you may suggest, to show that I want to do what is right, but Mr. Garrison, I am not in a position just now to lift that mortgage, and I do want to get this matter straightened out satisfactorily to both of us. Please let me hear from you at your earliest convenience regarding this matter."

In response to this letter, appellant Garrison sent the following reply and notice of rescission:

"You evidently now wish me to pay the money and accept your deed with the $1,000 mortgage unpaid, or the land released from the mortgage, without the right-of-way being either selected or improved, with the $4,000 second mortgage against the right-of-way. In other words, to take the property practically as it is and look to Mr. Payne to pay off the mortgage and improve the right-of-way. . . . In the meantime, on Dec. 6, 1916, I had an opportunity to lease this property and again on Jan. 4, 1916; . . . to these people I have been unable to give any reply on account of the un-

certainty about closing the deal. . . . In fact, you say you are 'not in a position just now to lift that mortgage.' . . . In view of this admission on your part and your failure to say anything about the right-of-way, its selection or improvement, or the delinquent taxes still unpaid, I think it is useless for us to go any further. It seems that I have waited in vain since November 29, 1915, and kept my check good at bank since 29th of Nov. for you to get busy on. I have waited in vain. . . . We have accordingly, in view of all these facts, concluded to and do hereby give you notice that we have rescinded the contract."

On receipt of this notice of rescission, respondents at once made application through Wilson, the local attorney for the board, for a release of the twenty-five acres, but the application was held up until early in February because of the failure of respondents to inclose a remittance of the amount tendered for a release. The board agreed to the release for the sum of $500, which sum was forwarded by respondents upon notification, and a release duly executed on February 16, 1916. The delinquent tax sale against the property was redeemed by respondents on February 28, 1916.

Respecting the right of way for a road over the Payne forty, there was in evidence a contract between Payne and appellants, executed on November 29, 1915, making provision therefor to the satisfaction of the latter. The appellants, however, claimed that Payne's mortgage of $4,200 to respondents created an incumbrance upon this right of way. To obviate this, respondents executed a release of their mortgage as to the right of way agreed upon by Payne and appellants, and this release was recorded in Wasco county on February 16, 1916. The abstract of title was brought down to date and certified on March 3, 1916, showing clear title to the property in respondents.

It will be observed that the title was not perfected until subsequent to the commencement of this action for rescission, but that the respondents, in their answer, tendered a sufficient

warranty deed and abstract showing clear title and brought the same into court. It appears from the evidence that respondents were making an effort, beginning at a date prior to the maturity of the contract, to get their title in a shape to be satisfactory to the appellants. They did not understand in the beginning that more would be required of them than the securing of the release of the mortgage to the land board, and they were in good faith endeavoring to accomplish that. Learning that appellants insisted that respondents' mortgage from Payne was an incumbrance on appellants' right of way and that the 1912 taxes were a lien against the land at the date of the contract, respondents promptly took measures to release their mortgage as against the right of way and to redeem from the lien of the 1912 taxes. They had completely cleared the title within two and one-half months of the date on which appellants were entitled to a good and sufficient deed. The contract did not make time of its essence, and it is the rule of law in such cases that a vendor is entitled to a reasonable time in which to perform his contract. Whether or not the two and one-half months taken by respondents to perfect their title was a reasonable time it is unnecessary to decide in view of the attitude of the parties. The appellants did not promptly rescind at the time when they were entitled to performance, but waived such right by their acquiescence in the efforts of respondents to effect a release of the mortgage incumbering the land. It is true the appellants asked respondents to pay off the blanket mortgage covering another tract in addition to that contracted for by appellants, and that, on being informed that this could not be done, they gave notice of rescission. But respondents were endeavoring all the time to get the twenty-five-acre tract of appellants released from the mortgage at the smallest outlay possible for themselves, and when they found that could not be done for less than a payment of $500 on the mortgage debt, they promptly paid that sum. That appellants were willing to

grant time appears from the cross-examination of Mr. Garrison:

"Q. After you learned that there was a mortgage of $1,000 did you or did you not consent and approve of Mr. Newton's proceeding to get a release from that mortgage as to that 25 acres of land? A. Yes, I did. I wanted him to."

After allowing the respondents a month and a half in which to clear title, and just as arrangements to accomplish that object were being brought to a head, notice of intended rescission was given. Following closely upon the filing of the complaint, respondents were able to tender a perfect title so far as the incumbrances were concerned. Their legal title had always been perfect.

We think there was sufficient showing of consent to delay in performance to warrant the time taken in which to perfect the title. There was no showing of injury to the appellants other than their statement in one of their letters that they would have been able to lease the land if they had had perfect title. The land had never been occupied or cultivated by appellants, but had evidently been bought for speculative purposes and allowed to lie idle. There was no proof of depreciation in value between the date for performance and the time of trial. The principle of law applicable to the state of facts existing in this case is expressed in *Opsjon v. Engebo,* 73 Wash. 324, 131 Pac. 1146, as follows:

"The rule is well settled in this state that, after a vendor has waived the essence clause of a contract, the purchaser will not be in default until after a demand has been made upon him for a compliance with his contract and a reasonable time has elapsed in which to comply with the demand. *Whiting v. Doughton,* 31 Wash. 327, 71 Pac. 1026; *Douglas v. Hanbury,* 56 Wash. 63, 104 Pac. 1110, 134 Am. St. 1096; *Walker v. McMurchie,* 61 Wash. 489, 112 Pac. 500. We have also held that the time in which to perform a written contract may be waived as well as extended by parol. *Whiting v. Doughton, supra.*

"The appellant, having encouraged the prosecution of the suit to quiet title to the lot, and having acquiesced in the

delay in tendering the deed and abstract of title, was not in a position to assert a breach of the contract upon the part of respondents in failing to convey the lot at the time agreed upon. *Colpe v. Lindblom*, 57 Wash. 106, 106 Pac. 634; *Hawes v. Swanzey*, 123 Iowa 51, 98 N. W. 586; *Bales v. Williamson*, 128 Iowa 127, 103 N. W. 150."

Respondents had a cross-complaint in the action asking for judgment for $535, the amount of final payment and interest due on the contract. The appellants conceded that sum was due from them if the contract should be enforced.

We think the findings and conclusions of the court are supported by the evidence. The judgment based thereon is affirmed.

ELLIS, C. J., MOUNT, PARKER, and HOLCOMB, JJ., concur.