## WILDBERG BOX CO. *v.* DARBY.

### (*Nashville,* December Term, 1919.)

1. **SALES.** Seller after waiver of time limit has reasonable time there-
   from in which to deliver.

   Where the seller of lumber failed to deliver by the time set and the
   buyer waived the time limit, and no specific time was agreed upon
   in which the lumber was to be delivered, the seller had a rea-
   sonable time from the time limit within which to deliver. (*Post,
   pp.* 73-80.)

   Case cited and approved: Foundry Co. v. Wheel Co., 113 Tenn., 375.

   Cases cited and distinguished: Lowy v. Rosengrant, 196 Ala., 337;
   Mann v. Maurel (Sup.), 126 N. Y. Sup., 731; Garrison v. Newton.
   96 Wash., 294; Norrington v. Wright, 115 U. S., 188.

2. **SALES.** Directions not to ship any more goods terminated contract
   and released seller.

   The buyer of lumber, by writing the seller, after long delay in de-
   livery, not to ship any more, terminated the contract, and released
   the seller from making further shipments.   (*Post, pp.* 80-83.)

3. **SALES.** Buyer could have reinstated time as of essence by giving
   notice fixing time for performance.

   After waiver of the original time   limit for delivery of   lumber
   sold, so that the seller had reasonable time, the buyer could have
   sued for breach of nondelivery expiration of such reasonable time
   without any notice to the seller, or the parties could have agreed
   on a further extension, or the buyer could have reinstated time as
   of the essence after waiver by giving defendant notice, fixing a
   reasonable time for performance, that it would rescind after ex-
   piration of the time, and hold him liable for the damages from
   his breach.   (*Post, pp.* 83, 84.)

4. **SALES.** Essentials of buyer's notice to seller to reinstate time as
   of essence stated,

Notice by the buyer of lumber to the seller in default after waiver of the original time limit should have fixed essential time for performance, which must have been reasonable under the circumstances, and should have advised the seller that, unless he delivered within the prescribed time, the contract would be terminated or rescinded, and that he would be held liable for damages sustained. (*Post, p.* 84.)

Case cited and approved: Garrison v. Newton, 4 A. L. R., 822.

5. **SALES.** Buyer terminated contract in force by notifying seller not to ship.

Contract for sale of lumber, being in force long after its original time limit for delivery on account of buyer's waiver of such limit, buyer terminated it by notifying seller not to make further shipments, and such termination, without giving required notice to deliver in a reasonable time, breached the contract, and precluded the buyer from recovery from the seller. (*Post, pp.* 84, 85.)

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.— HON. I. H. PERES, Chancellor.

WILSON & ARMSTRONG, for appellant.

R. L. BARTELS and ELIAS GATES, for appellee.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

This is a suit to recover damages for the breach of a contract by which the defendant, Darby, sold and agreed

to deliver to the complainant, Wildberg Box Company, 300,000 feet of gum lumber. The contract is contained in two letters as follows:

"October 31, 1917.

"H. W. Darby Hardwood Lumber Company, Grenada, Miss.—Gentlemen: . . . If you can guarantee a genuine article (Tupelo gum), we would be willing to place an order with you for 300,000 feet, shipment to start as soon as your stock is dry, and subject to a sample car to show grade and texture, at $24 f. o. b. Cincinnati, for 4/4 No. 2 common. We will take the stock in at the rate of 50,000 to 75,000 feet per month, if you ship it or we would be willing to take as small a quantity as two cars a month.

"If you care to accept the above proposition let us hear from you by return mail, stating when you would be able to ship the sample car, etc.

"WILDBERG BOX COMPANY."

"Grenada, Miss. 11/2-17.

"Wildberg Box Company, Cincinnati, Ohio—Gentlemen: We have your valued favor of the 31st, and the Tupelo we are cutting is the genuine article. . . . We are entering your order for 300,000 feet of 4/4 No. 2 common Tupelo at $24, delivered on a Cincinnati rate of freight, to be shipped at the rate of 50,000 to 75,000 feet per month, shipments to begin as soon as the stock is dry, which will be about January 1st, possible during the latter part of December.

"H. W. DARBY LUMBER COMPANY."

The amount of lumber delivered was as follows:

| | |
|---|---:|
| March 8, 1918 | 8,324 feet |
| May 3, 1918 | 7,365 feet |
| September 5, 1918 | 9,829 feet |
| November 19, 1918 | 16,728 feet |
| Total | 42,246 feet |
| Balance undelivered | 257,754 feet |

The chancellor found the difference between the contract price and the market price to be $7 per thousand feet, making the amount of damages $1,804.24, for which a decree was rendered in favor of complainant.

The defendant has appealed to this court, and has assigned errors.

It is apparent from the record that, shortly after the contract was entered into, lumber began to advance in price and that the complainant was anxious for the defendant to execute the contract, and to that end wrote the defendant many letters, urging him to ship the lumber.

On the other hand, it is manifest that the defendant did not want to ship the lumber, and was engaged in a studied effort to avoid doing so, making flimsy excuses for not complying with his contract, but continually promising that he was going to perform.

On June 20, 1918, the complainant wrote Darby, and stated that, unless he gave some definite information about the matter by June 24, it would then go upon the market and purchase lumber of the same character, and bring suit against him for damages. Darby replied to this letter on June 29th as follows:

"We have canceled the balance of your order, and do not expect to make further shipments on the same. We trust that you will accept the cancellation without dispute."

On July 2d the box company replied to that part of the letter as follows:

"We certainly will not accept any cancellation of our order—and unless you agree to ship the lumber that is due us, we will certainly enter suit for the difference in price in the original order and what we will have to pay for the same amount of stock on the open market. Unless we receive notice of shipment from you within the next thirty days, we will take legal steps to collect the amount of money that is due us for nonfulfillment of contract."

It is proper at this point to note that under the maximum time given by the contract for delivery, all of the lumber should have been delivered by July 1, 1918.

On July 20th, in reply to complainant's letter of the 2d, the defendant wrote, withdrawing his order of cancellation, and stated that he would go ahead and fill the contract.

To this the complainant replied, and stated that it was glad he had reconsidered, and inquired as to when it could look for a car of lumber. Although Darby had agreed to ship a car on July 22d, he did not, in fact, ship one until September 21st.

On October 12th the complainant wrote Darby, insisting upon definite information as to the shipment of lum-

ber, to which Darby replied on October 15th, stating that he would begin shipping within a week or ten days. He did not do so, however, whereupon, on October 25th, complainant's solicitor at Cincinnati wrote Darby the following letter:

"October 25, 1918.

"H. W. Darby Hardwood Lumber Company, Room 1531, Bank of Commerce & Trust Co. Bldg., Memphis, Tenn.— Gentlemen: I have been retained by the Wildberg Box Company of Cincinnati, Ohio, to make claim against you for default on your contract for shipment of 300,000 feet of lumber, as per your acceptance of order dated November 2, 1917.

"I am instructed to bring suit against you for the damage sustained by my clients on account of your failure to complete your contract. Before doing so, however, I wish to give you the opportunity, if you so choose, to indicate to me upon what theory you expect my clients to suffer the loss they have sustained by reason of their having been driven to the open market to buy lumber to make up your failure to deliver on time.

"I have gone over their file very carefully, and I see no reason, so far as the file is concerned, why you are not liable to them in damages.

"If, however, you desire to take the matter up with me, I shall be very glad to hear from you.

"Yours very truly,

"F—CH.      [Signed]      A. J. FREIBERG."

On October 29th Darby replied to this letter as follows:

"October 29, 1918.

"Mr. A. J. Freiberg, Union Trust Bldg., Cincinnati, O.—Dear Sir: We have yours of the 25th with reference to No. 2 common Tupelo gum which we are due the Wildberg Box Company, and wish to advise that we have never refused to fulfill this contract, but delivery has been delayed on account of sickness and labor shortage. We expect to be able to ship two or three cars on this order within the next two weeks and the balance as soon as possible.

"Yours very truly,

"H. W. DARBY HARD. LUMBER CO.,

"HWd—O                                By H. W. Darby."

On November 12th the defendant shipped to the complainant another car of lumber, which arrived in Cincinnati on November 19th, but the complainant declined to accept it, and notified the defendant by letter on that date not to ship any more lumber.

Later it was agreed that this last car of lumber should be received by the complainant and applied on the contract without in any wise prejudicing or affecting the Box Company's right to proceed against Darby for damages for failure to comply with his contract.

The original bill in this cause was filed on February 12, 1919.

Mr. Wildberg, on being questioned as to his reason for refusing to receive the car of lumber on November 19th, said:

"The armistice was signed on November 11th, and shipment was made on November 12th, and we did not know

which course the market was going to take, and we did not propose to give Darby the opportunity of shipping the balance of this lumber provided the market broke to pieces."

The complainant insists that the defendant had breached the contract and was in default when the car of lumber arrived in Cincinnati on November 19th, and hence that it had a perfect right to decline to accept it.

On the other hand, it is insisted by the defendant that the contract was still in force; that it had never been cancelled or terminated, so that the complainant was duty bound to accept said lumber, and hence breached the contract by declining to accept same and by notifying him not to make further shipment.

Both parties have treated the original contract as one of which time was the essence. It is also conceded that this provision of the contract was waived by the complainant electing to keep the contract alive, as is evidenced by several letters, one of which was written as late as October 12th, calling upon the defendant to ship the lumber.

The defendant having failed to deliver the lumber by July 1st, and the complainant having elected to waive the time limit, and no specific time having been agreed upon within which the lumber was to be delivered, the law is that the defendant had a reasonable time from July 1st within which to comply.

In 13 Corpus Juris, 690, it is said:

"Where a stipulation for performance at a particular time has been waived, the party in whose favor the waiver

operates is thereafter bound only to perform within a reasonable time, except in a case where there has been a specific extension of time, in which case it is held that the new time fixed becomes of the essence, as was the case in the original contract. So, where the time fixed by the contract for performance is permitted to pass, both parties concurring, the time of performance thereafter becomes indefinite, and one party cannot rescind until full notice and a reasonable time for performance is given."

In *Lowy* v. *Rosengrant,* 196 Ala., 337, 71 South., 439, a contract was under consideration, under the terms of which certain staves were to be delivered by August 1, 1914. The time fixed in the contract for delivery had been waived. The court said:

"The failure of a seller to deliver on time confers upon the buyer the option to either treat the contract as terminated, or waive the time limit and insist on the delivery, within a reasonable time. After the buyer has waived the time limit and insisted on delivery under the contract, he cannot put the seller in default without first giving notice of his desire to receive the purchased property with the offer of reasonable time for making the delivery after notice."

In *Mann* v. *Maurel,* 126 N. Y. Supp., 731, it appears that the defendant had entered into a contract with the plaintiff to write a play for him, and which was to be delivered in October, 1908. The manuscript was not delivered within the contract time, and plaintiff brought

143 Tenn.—6

suit to recover damages for the breach of the contract. The court said:

"Assuming that the plaintiff had the right when October, 1908, passed to immediately claim rescission, he did not do so, but continued negotiations relative to the play, and I think the defendant became then entitled to a notice to finish her work within a reasonable time after such notice."

In *Garrison* v. *Newton,* 96 Wash., 294, 165 Pac., 93, 4 A. L. R., 810, the court quoted approvingly from a former decision by it as follows:

"The rule is well settled in this State that, after a vendor has waived the essence clause of a contract, the purchaser will not be in default until after a demand has been made upon him for a compliance with his contract, and a reasonable time has elapsed in which to comply with the demand."

In the note to this case many authorities are cited in support of its holding.

This same principle applies as to building contracts. 9 Corpus Juris, 790.

In 13 Corpus Juris, 689, it is said:

"Where time is of the essence of a contract, it is not necessary for one party to notify the other that he will treat the contract as breached if not complied with on the date specified in order to avail himself of the time stipulation.

"Although by the contract time is made of its essence, the parties may waive such provision by a subsequent

agreement, or by conduct indicating an intention to regard the contract as still in force after default."

In *Norrington* v. *Wright,* 115 U. S., 188,. 6 Sup. Ct., 12, 29 L. Ed., 366, the court said:

"In the contracts of merchants, time is of the essence. The time of shipment is the usual and convenient means of fixing the probable time of arrival, with a view of providing funds to pay for the goods, or of fulfilling contracts with third persons. A statement descriptive of the subject-matter, or of some material incident, such as the time or place of shipment, is ordinarily to be regarded as a warranty, in the sense in which that term is used in insurance and maritime law, that is to say, a condition precedent, upon the failure or nonperformance of which the party aggrieved may repudiate the whole contract."

The foregoing statement of the Supreme Court of the United States was approved by this court in *Foundry Co.* v. *Wheel Co.,* 113 Tenn., 375, 83 S. W., 167, 68 L. R. A., 829.

In the present case the parties elected to continue the contract in force, and the contract was in force, and was not rescinded or terminated until the complainant wrote the defendant on November 19th not to ship any more lumber. The complainant thereby terminated the contract and released the defendant from making further shipments.

The complainant could have sued for a breach of the contract after July 1st without any notice. Or the parties could have agreed upon a specific extension of time,

or the complainant could have reinstated time as of the essence, after waiver, by giving the defendant notice that it would rescind at the expiration of a reasonable time, and hold him liable for damages for breaching the contract. This, however, it did not do, but terminated the contract without giving the defendant proper notice.

This notice should have fixed an essential time for performance, which, of course, must be a reasonable time under the facts and circumstances, and should advise the defendant that, unless he complies within the prescribed time, the contract will be rescinded or terminated, and that he will be held liable for the damages sustained.

In the note to *Garrison* v. *Newton*, 4 A. L. R., 822, beginning on page 826, a number of instances are cited as to what constitutes reasonable time.

While the cases just referred to deal with contracts relative to the sale or exchange of land, the principle involved is the same as that under consideration in the present cause.

It appears from the correspondence that the complainant was constantly urging the defendant to ship the lumber, and several times threatened to institute proceedings for damages if he did not do so, but such entreaties and threats are not sufficient to constitute the required notice.

The contract being in force on November 19th, the complainant terminated it by notifying the defendant not to make further shipments, and, having terminated it without giving the required notice, it thereby breached the contract, and precluded itself from recovering damages from the defendant.

Wildberg Box Co. v. Darby.

It results that the decree of the chancellor will be reversed, and the bill will be dismissed.

Under the facts of the cause, we are of the opinion that the defendant should pay one-half of the costs of the lower court and of this court.