## HELLEN et ux. v. MORGAN et ux.

(District Court, E. D. Washington, S. D. July 10, 1922.)

No. 967.

Vendor and purchaser ⬅️130(4)—Deed of heir of deceased Indian allottee held to convey "marketable title."

A deed executed by an adult Indian to land of a deceased trust allottee, sold pursuant to authority granted by the Interior Department on her petition, supported by affidavits of two other Indians, setting forth that she was sole heir at law of the allottee, which deed was approved by the Secretary of the Interior, as required by Act May 27, 1902, § 7 (Comp. St. § 4223), *held* to convey a marketable title under the law of Washington, in the absence of any claim that grantor was not an heir of the allottee or that there were other heirs.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Marketable Title.]

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
283 F.—28

In Equity. Suit by Ben H. Hellen and Eva Hellen, husband and wife, against Robert H. Morgan and Gertrude Morgan, husband and wife. Decree for complainants.

Lee C. Delle, of Yakima, Wash., for plaintiffs.
William B. Clark, of Yakima, Wash., for defendants.

RUDKIN, District Judge. This is a suit for specific performance by a vendor. The case has been submitted for final decree on bill and answer. The merchantable character of the title tendered is the only question discussed by counsel in their briefs. The land was originally allotted to a Yakima Indian under the General Allotment Act of February 8, 1887 (24 Stat. 389 [Comp. St. § 4195 et seq.]). On the 10th day of July, 1897, the usual trust patent issued, declaring that the United States does and will hold the land thus allotted, for the period of 25 years, in trust, for the sole use and benefit of the allottee, or, in case of his decease, for the sole use of his heirs, and that on the expiration of that period the United States will convey the same by patent to the allottee or his heirs in fee, discharged of the trust, and free of all charges or incumbrances whatsoever. Some time during the year 1900 the allottee died, and on the 21st day of January, 1907, one Yoweskah Tahkeal, a sister and adult heir of the deceased allottee, petitioned the Department of the Interior, through the superintendent of the Yakima Indian Agency, to sell the allotment, alleging in her petition, among other things, that she was the sole heir at law of the deceased, and that the deceased died, leaving him surviving no wife, issue, father, mother, or brother, nor the descendants of any such. This petition was supported by the affidavits of two Indians. The prayer of the petition was granted. A deed was executed by the petitioner to the grantor of the present plaintiffs, and was duly approved by the Secretary of the Interior under date of March 3, 1907, as required by section 7 of the Act of May 27, 1902 (32 Stat. 275 [Comp. St. § 4223]). The purchaser took possession upon the execution of the deed, and has made valuable improvements, continuing in possession through himself and his grantees up to the present time.

Much of the brief of the defendants is devoted to a discussion of the claim that the restriction upon alienation runs with the land and is binding upon the heirs, as well as upon the original allottee. This much will readily be conceded, but it was within the power of Congress to remove the restriction upon alienation, and this was done by the act of 1902, supra. Under the latter act the approval by the Secretary of the Interior of a deed executed by the adult heirs of a deceased allottee conveys a complete title to the grantee. Egan v. McDonald, 246 U. S. 227, 38 Sup. Ct. 223, 62 L. Ed. 680. That was a writ of error to the Supreme Court of the state of South Dakota. The state court held, under similar facts, that a deed approved by the Secretary of the Interior conveyed a marketable title, and that the purchaser could not recover the purchase price paid because of a defect in the title of his vendor. In disposing of the question now before me the Supreme Court said:

"The state court held that, McDonald having shown a deed to Huston, approved by the Secretary of the Interior and executed by three persons who declared themselves to be the only heirs, the burden was upon the plaintiff to

establish the fact, if it was such, that there were other heirs, and that the mere suggestion in argument that there may have been some additional heirs does not cast such a suspicion upon the title as to render it unmerchantable. This is a matter of state law, with which we have no concern. Nor have we occasion to consider whether, as held in Daugherty v. McFarland, 166 N. W. 143, the mere approval by the Secretary of the Interior would have operated to convey to the grantee a good title, even if it had appeared that the deed was executed by a part of the heirs only."

The only question with which I am now concerned is therefore: Is the title tendered a merchantable one under the laws of the state? It was held by the Supreme Court of the state in Crosby v. Wynkoop, 56 Wash. 475, 106 Pac. 175, and Colpe v. Lindblom, 57 Wash. 106, 106 Pac. 634, that a deed from the heirs of a deceased person does not convey a marketable title, where there is nothing of record to establish the heirship except ex parte affidavits. And if there were nothing in this record beyond mere ex parte affidavits, I would feel constrained to follow these decisions, and to hold that the title is not a marketable one. But it seems to me some force and effect must be given to the approval of the Secretary of the Interior. It is conceded by the defendants that if a patent had issued, either to the purchaser or to the heirs pursuant to legal requirements, such a patent would convey a valid title, and why should not the approval of the Secretary of the Interior, when required by law, have the like effect. This is the mode which Congress saw fit to employ to remove or abrogate the restriction upon alienation and to convey the title to the allotment, and when the Secretary has acted it should be presumed, in the absence of some showing to the contrary, at least, that the title has passed to the grantee. Any other rule, it seems to me, is fraught with untold mischief. The title to thousands of acres of land on this reservation, and perhaps elsewhere, has passed by deeds thus approved, and if these titles are not marketable I can conceive of no means by which they can be made so, and counsel has suggested none.

Whether it may be shown collaterally that the grantee was not an heir, or that there are other heirs, or whether the heirs should be relegated to a claim against the purchase price, are questions not before me. All I hold is that, where the deed has been approved by the Secretary of the Interior as required by law, and there is no claim or suggestion that the grantor in the approved deed was not an heir, or that there are other heirs, a marketable title is made out. Such a title has been defined by our Supreme Court as follows:

"A title, to be a marketable one, must be one which a prudent investor, well informed as to the facts and their legal bearing, ready and willing to perform his contract, would be willing to accept. Such a title must be free from probable litigation, and, except in rare cases, must be fairly deducible of record." Colpe v. Lindblom, supra.

And it has likewise been said:

"The doubt to avail as a defense, must be a reasonable one, and rest upon some debatable ground. A bare possibility of litigation does not render a title doubtful." 36 Cyc. 633.

Measured by these rules, I am inclined to the opinion that the title is a marketable one. The defendants admit that they are in possession

of the land under their contract of purchase, and whether they can thus retain possession, and say to their vendors, "Your title is defective, and you are powerless to remedy the defect," may admit of question; but that phase of the case has not been discussed.

A decree of specific performance will be entered in accordance herewith.