GROSECLOSE *et al. v.* CHEROKEE CREAMERY, INC.

(*Knoxville*, September Term, 1936.)

Opinion filed November 21, 1936.

534

Leon Jourolmon, Jr., of Knoxville, for complainants.

Simmonds & Bowman, of Johnson City, for defendant.

Mr. Justice Chambliss delivered the opinion of the Court.

In January, 1929, a contract was entered into between the parties to this suit (and others not herein joined) by which the complainants agreed to sell and deliver to defendant all milk produced by herds of milch cows owned by them for a period of five years, defendant to accept and pay for same at 70 cents per butter fat pound. The market price of milk having fallen greatly in the winter of 1931-1932, the creamery sought a concession in the contract price to 45 cents. No agreement was reached, but checks for January, 1932, milk deliveries, sent out February 10, 1932, were drawn on the 45 cents basis, and marked in red ink "payment in full." Complainants objected to this and were told by defendant's representative to go on and use them. Only 45 cents was paid for February and March milk deliveries, and in March complainants ceased to deliver milk under the contract, having been unable to collect from defendant more than 45

cents per pound for these months, despite the contract for 70 cents.

Complainants sought in this suit, originally brought in the circuit court and transferred to the chancery court because complicated accounting appeared to be involved, to recover (1) the difference between the contract price of 70 cents and the 45 cents per pound paid for milk delivered in January, February, and March, and (2) damages for the breach of the contract for the remainder of the contract term.

The chancellor dismissed the bill, and the Court of Appeals modified his decree to the extent of allowing recovery for the difference between the contract price and the sums paid for the milk delivered. That court held that the action for damages for the breach did not lie because the complainants had failed to give notice of intention to hold the defendant for such damage—applying the rule requiring a seller, after waiver of a breach for failure of the buyer to receive at a time fixed, to give reasonable notice of his intention to cancel before his right to enforce a breach will accrue. That court was of opinion that the principle announced in *Wildberg Box Co.* v. *Darby*, 143 Tenn., 73, 223 S. W., 855; *Vosburg* v. *Lumber & Mfg. Co.*, 147 Tenn., 647, 251 S. W., 41, and, particularly, *Tennessee Fertilizer Co.* v. *International Agricultural Corporation*, 146 Tenn., 451, 243 S. W., 81, was applicable here. Both parties filed petitions to this court and both have been granted and argument heard.

It is earnestly insisted for complainants below that the line of cases and the principle invoked have application alone to contracts wherein time is an essential element of performance—wherein the buyer has by acquiescence, or

otherwise, waived performance at the time fixed and is properly required thereafter to give the seller reasonable notice and opportunity to comply before enforcing the penalty incident to a breach. That court did not find, in the instant case, nor did the facts reveal, that complainants at any time expressly agreed to a modification of or a release of the contract, and their right to recover damages for breach of the contract to perform appears clear, unless cut off by the rule invoked. Whether or not the facts bring this case within the principle of law invoked is, therefore, the determinative question.

It appears that a letter was written by the defendant, on February 12, 1932, to complainants and duly received, reading as follows:

"Altamont Dairy,

"Groseclose Brothers,

"Mrs. W. D. Neal,

"Kingsport, Tennessee.

"You are familiar with the prices milk is being sold at in Kingsport, and we have no control over these prices, therefore we can only pay the market price for milk in the amount used for bottling sales.

"Your milk is figured at $.45 per pound fat which is the market price being paid for milk, meeting the ordinance for bottle milk in Kingsport, Tennessee.

"We hope this will be satisfactory with you as there is no way we can pay more and meet our obligations.

"Yours truly,

"Cherokee Creamery, Inc.

"President."

Accompanying this letter was defendant's check dated February 10, 1932, for $287.49, reciting:

"Milk delivered Jan. 1932. 15761 # milk, 638.86 # fat @ .45c. Full payment."

Complainants protested that they would not accept this as payment in full and were told to go ahead and use this check, which finally they did on February 18th. By this time complainants had delivered milk in February for more than half a month, for which payment would fall due the 10th of the following month. Having notified defendant that they would expect payments to be made at the contract price, they continued deliveries until the middle of March. When the check came in for February deliveries at the reduced price, despite their protect, they ceased making deliveries and found other buyers as best they could, during the balance of the term of the contract with defendant. Conceiving that defendant was liable for its breach and that the amount of damages had been determined by the event, they brought this suit.

As we understand the theory relied on for defendant, it is that a waiver by complainants is shown by (1) the acceptance and collection of the several checks drawn on the 45-cent basis, and (2) the suspension by complainants in March of deliveries, without demand, or notice of intention to hold defendant for any loss accruing over the balance of the contract period. However, complainants insist that when defendant refused to pay for the milk at the contract price and persisted in such refusal after express notice from complainants that they would not consent to a modification, or to receive payment at a reduced price, a breach by defendant took place, and complainants' right of action accrued for such loss and damages as might be suffered by them over the period of the contract.

 We are not of opinion that these facts present a case for application of the rule followed in the cases above cited, but that the instant case falls within the rule thus stated by GREEN, C. J., in *Lamborn & Co.* v. *Green & Green*, 150 Tenn., 38, at page 47, 262 S. W., 467, 469: "Where one of the parties unequivocally refuses to go on with a contract, it is not necessary for the other to make a demand upon the defaulting party for performance." It is, of course, true that if the seller waives, either expressly or by acquiescence, compliance with the terms of payment under a contract for installment performances, he must, by tender and demand, reinstate his right to recover for the breach before bringing suit for damages. But on the facts here shown and found by the Court of Appeals, no waiver by complainants appears. They accepted the partial payments for deliveries made for January and February under protest, and upon notice given to and accepted by defendant, that the reduction demanded would not be conceded. And the circumstances of the deliveries made after receipt of the letter of February 12th, above quoted, do not show a waiver of complainants' contractual rights. When defendant continued to refuse to pay for the milk at the contract price, it emphasized its breach announced in its letter of February 12th, and justified complainants' suspension of deliveries. We think defendant continued deliveries only so long as was reasonably proper to make certain that defendant would adhere to the determination declared in its letter of February 12th no longer to pay the contract price.

Mr. Justice GREEN reviewed and distinguished the *Wildberg Box Co.* v. *Darby, Tennessee Fertilizer Co.* v. *International Agricultural Corporation* and *Vosburg* v.

*Lumber & Mfg. Co. Cases, supra,* in his opinion in *Lamborn & Co.* v. *Green & Green, supra,* and, as was said in that opinion, so here: "There is nothing in *Tennessee Fertilizer Co.* v. *International Agr. Corporation, supra,* contrary to what we have said herein. In that case the seller undertook to rescind the contract without any further opportunity whatever given to the purchaser to comply." In the instant case there was no rescission involved. There was merely an installment delivery and refusal by the buyer to pay therefor at the plain contract price, with a definite, express notice that this refusal would be extended and applied to all future deliveries. We, therefore, think it inescapable that the case is directly within the language hereinbefore quoted from *Lamborn & Company* v. *Green & Green, supra,* "Where one of the parties unequivocally refuses to go on with a contract, it is not necessary for the other to make a demand upon the defaulting party for performance."

In this view, the chancellor was in error in taking the case from the jury and dismissing the bill on the practically undisputed facts; and the Court of Appeals was in error in affirming the decree below as to the right to recover for damages for refusal of defendant to accept and pay for the milk undelivered following the breach. Complainants have the right to a recovery for (1) the unpaid balance on the deliveries made, and (2) the loss suffered by complainants on account of the milk not received following the breach of defendant during the unexpired term of the contract, and the decree of the Court of Appeals is so modified. The cause is remanded for a new trial for the fixing of these amounts, either by the court upon reference, or by a jury, at the election of complainants.