[No. 26177. *En Banc.* October 1, 1936.]

NEW NETHERLANDS AMERICAN MORTGAGE BANK, LTD., *Respondent*, v. E. N. ROBINSON *et al., Defendants*, IVA HENDER, *Appellant*.[1]

[1]Reported in 61 P. (2d) 151.

C. A. *McCabe,* for appellant.

*Parker W. Kimball,* for respondent.

MITCHELL, J.—Deer Park Development Company, a corporation, on August 10, 1917, gave its promissory note in the sum of $3,150, due August 10, 1921, to Arcadia Orchards Company, a corporation, and, to secure the payment of it, executed, acknowledged, and delivered a mortgage on the north half of section 33, township 29 north, range 42 E. W. M., then owned by the mortgagor. The mortgage was filed and recorded in the auditor's office of Spokane county, where the land is located, on February 20, 1918. Thereafter, by assignments, first by Arcadia Orchards Company to Netherlands American Mortgage Bank, Ltd., a corpo-

ration, and then by that corporation to the plaintiff herein, New Netherlands American Mortgage Bank, Ltd., a corporation, the latter became, and since has been, the owner and holder of the note and mortgage. Each assignment of the mortgage was duly placed of record.

On November 8, 1919, the Deer Park Development Company made and delivered its duly acknowledged land contract, agreeing to sell to E. H. Roberts, who agreed to buy, the NW¼ of the NW¼ of the section (forty acres), part of the purchase price being payable in installments over a period of several years, at the conclusion of which period the company agreed to convey the forty acres. The contract was recorded on June 2, 1920.

Thereafter, under a written agreement, dated December 9, 1924, acknowledged December 15, 1924, E. H. Roberts and his wife, parties of the first part, agreed to convey the forty acres to Mrs. Iva Hender, the party of the second part, provided she paid all the purchase price, a portion of which was payable in installments over a period of several years. This contract provided that "the first parties authorize second party to pay the Deer Park Development Company the annual installments due them," amounting at that time to $855 altogether, as stated in the contract. This contract was recorded March 2, 1925. At the same time, December 15, 1924, and as of that date, E. H. Roberts and his wife executed and acknowledged a deed of conveyance of the forty acres to Mrs. Iva Hender.

The deed, dated December 15, 1924, from Roberts and his wife to Mrs. Hender, and the contract from the Deer Park Development Company to Roberts, were placed with the First State Bank of Deer Park, Washington, under an escrow agreement between

Roberts and wife and Mrs. Hender and her husband, which provided that the instruments should be delivered to Mrs. Hender upon her making payments as set out in the escrow agreement, which also provided that, when a deed should be given Roberts by the Deer Park Development Company, it should be recorded and placed in escrow with the other papers. No deed of conveyance was ever made by the Deer Park Development Company to E. H. Roberts.

The Deer Park Development Company was stricken from the rolls of corporations in this state, as a delinquent corporation, in July, 1928. Thereafter, all of the mortgaged property was conveyed by trustees of the corporation to one E. N. Robinson, and, as payments were made by Mrs. Hender on her contract with Roberts, the payments due the Deer Park Development Company (the total of which was mentioned in the land contract between Roberts and Mrs. Hender) were remitted by the bank to E. N. Robinson, and by him to the New Netherlands American Mortgage Bank, Ltd., to be applied on the note and mortgage held by it.

After the payments were completed by Mrs. Hender about the latter part of 1931 on the land contract between the Roberts and her, the contract and the deed were delivered to her, whereupon she recorded them in the county auditor's office.

Mrs. Hender was let into possession of the forty acres at the date of her contract with E. H. Roberts and wife, and never had actual knowledge of the mortgage until after making final payment on her contract for the forty acres. Other persons, defendants herein, after the mortgage was recorded, acquired some interest in or lien upon portions of the mortgaged premises, other than the forty acres described in the contract between Roberts and wife and Mrs. Hender.

It appears that, from time to time, each and every year 1918-1932, some one or more of the parties interested in the mortgaged property paid to the holder of the note and mortgage, or to some one for the holder, certain amounts on the principal or interest, or both.

Complaint was filed in the superior court May 23, 1933, to recover the balance due on the $3,150 promissory note and to foreclose the mortgage. Judgment on the note and decree of foreclosure were entered in favor of the plaintiff. The judgment provides that certain portions of the mortgaged premises, other than the forty acres, shall be first sold, and then the forty acres, if necessary. No objection was made to the order in which the property was directed to be sold. Mrs. Iva Hender has appealed from the decree of foreclosure so far as it affects the forty acres in which she is interested.

The facts, as above stated, are not in dispute. The only defense is that the action is barred by the statute of limitations, which defense is argued from two viewpoints. First, that the appellant is a successor in interest of E. H. Roberts and wife, in whom title to the forty acres became vested on November 8, 1919, by virtue of the delivery to them of the contract from the Deer Park Development Company, of which conveyance the holder of the note and mortgage was given constructive notice by the recording of that contract on June 2, 1920; that the passing of the title and constructive notice thus given occurring prior to August 10, 1921, the original due date of the note and mortgage, deprived the mortgagor of the power or right to toll the statute of limitations beyond the due date of the note and mortgage, which was more than six years before the commencement of the action.

It cannot be said, however, that the recording

of the contract on June 2, 1920, gave constructive notice of the contract. We had no statute providing for the recording of such a contract so as to give notice of it until later. Laws of 1927, chapter 278, p. 671, § 3, Rem. Rev. Stat., 10596-3 [P. C. § 1914-3].

■ Nor, with or without that consideration, is the rest of the argument on this phase of the case sound, for the reason that the contract to Roberts did not convey title, and therefore differs from the case of *Hess v. State Bank of Goldendale*, 130 Wash. 147, 226 Pac. 257, 38 A. L. R. 829, cited and relied on by the appellant. On the contrary, the contract to Roberts was an executory one and did not pass title. It provided that the party of the first part (Deer Park Development Company), for itself, its successors and assigns, agrees to sell to the party of the second part (E. H. Roberts), and the party of the second part, for his heirs, executors and assigns, agrees to buy, the forty acres and to pay therefor part cash and the balance in nine annual payments. The contract further provides:

"III. Forthwith, after the full payment of said purchase money, taxes and interest, as aforesaid, time being the essence of this contract, the party of the first part agrees to execute or cause to be executed to the party of the second part a good and sufficient Warranty Deed for said described premises, to be delivered on the surrender of this Duplicate Contract. It is further agreed and understood that the first party shall have the right and privilege of executing to the said second party a deed to said premises at any time before the final payment shall have been made, and that the said second party shall then and there cause to be properly executed to said first party notes for the unpaid balance of purchase money, the same to be secured by first mortgage on said premises.

"IV. It is expressly agreed that time is the essence of this contract, and in case of default by the

party of the second part, his heirs or assigns, in any of the conditions above stipulated to be performed by him, then and in that case this contract shall become void and the party of the second part shall have forfeited his rights hereunder and said premises shall revert to and revest in said first party without any declaration of forfeiture or act of re-entry, or any other act to be performed by said first party, . . ."

By the contract, the owner agreed to *sell,* and the other party agreed to *buy and pay,* with the understanding that, after full payment had been made and other considerations and conditions complied with, the owner would then *execute or cause to be executed* to the other party a warranty deed conveying the premises. Then, in keeping with the intention of retaining title, it is provided that *the owner shall have the right and privilege of executing to the second party a deed to the premises at any time before the final payment shall have been made and take from the other party notes and a mortgage for the unpaid balance of the purchase price.* This last clause negatives the idea that the parties understood that the contract passed title.

Counsel for appellant, however, lays stress on the provision that, in case of a default in the performance by the party of the second part, the contract shall become void, and the rights of the party of the second part shall be forfeited, and *the premises shall revert to and revest in the first party,* etc.

A similar situation was presented in *Converse v. LaBarge,* 92 Wash. 282, 158 Pac. 958, involving an executory contract for the sale of land, which contained a provision as follows:

"But in case the second party shall fail to make the payments as set forth in this agreement, or any of them, punctually, and upon the terms specified, the times of payment being declared to be of the essence of this agreement, then the party of the first part

[Kelly], his heirs, executors, or assigns, shall have the right to declare this agreement null and void, and in such case all the rights and interest of second party [Converse] hereby created or then existing shall utterly cease and determine, and the premises shall revert to and revest in said first party without any declaration of forfeiture or act of reentry, . . ."

Discussing the effect of such provision, it was said:

"Contracts of this sort confer title in the contract purchaser only when fully performed on his part, or performance in so far as it is capable of being performed on his part. Until that time, such contracts are merely initiatory of title. By performance, they ripen into title, either legal or equitable, but fail of either by nonperformance."

In our opinion, the contract to Roberts did not pass title to the land so as to start the running of the statute of limitations against an action on the mortgage.

The other contention under the defense of the statute of limitations is that payments made on the mortgage by E. N. Robinson, as trustee for the owner, would not have the effect of tolling the statute.

All of the lands, including the forty acres, were under one mortgage, which did not contain any clause for the release of any portion of the land paid for by a purchaser. Robinson, as a trustee on behalf of the owner of all the land, or as a nominal grantee winding up its business, looked after collections on land contracts, which amounts he paid out on the mortgage, as was his duty, in order to protect the rights of all holders of land contracts, including the appellant and her predecessor, E. H. Roberts.

Moreover, appellant cannot claim either surprise or violation of her rights, because, in her contract with E. H. Roberts, which was signed by her, it is recited that Roberts holds the land under contract from Deer Park Development Company, upon which

there is $855 due in annual installments, with interest, and in her escrow agreement placed with the bank, she was careful to see that it provide:

"Out of each payment you [the bank] are to pay Deer Park Devlp. Co. the amount due on their contract until same is fully paid when you are to obtain above deed [owner to Roberts], record same and get abstract from Deer Park Dev. Co. *showing clear title* and pay balance over to E. H. Roberts."

The bank did make such payments to the owner through the owner's trustee or grantee Robinson, who, in protection of the rights of the appellant, applied the same on the mortgage, so that, when the mortgage, which had been duly recorded and constituted a lien prior to the initiation of appellant's rights, was paid, the abstract that she was to receive would show *clear title* to the forty acres. It appears that payments made by the appellant continued from the date of her contract with Roberts down to November 2, 1932.

Judgment affirmed.

ALL CONCUR.